THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Áppellee, v. CHAKA AYERS *et al.*, Defendants-Appellants.

First District (4th Division)    Nos. 1—00—1014, 1—00—1470 cons.

Opinion filed May 30, 2002.

Rita A. Fry, Public Defender, of Chicago (Julie A. Hull, Assistant Public Defender, of counsel), for appellant Chaka Ayers.

Michael J. Pelletier and Sarah M. Jacoby, both of State Appellate Defender's Office, of Chicago, for appellant Terrace Hoskins.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Margaret J. Campos, and Emily J. Grzanka, Assistant State's Attorneys, of counsel), for the People.

JUSTICE THEIS delivered the opinion of the court:

Following simultaneous but severed trials before two separate juries, codefendants Chaka Ayers and Terrace Hoskins were each convicted of the first degree murder of Kwasi Page. The trial court sentenced Ayers to 45 years' imprisonment and Hoskins to 26 years' imprisonment. In appeal number 1—00—1470, Hoskins argues that: (1) he was denied his fundamental rights to due process and trial by jury where the jury was given contradictory instructions on first degree murder and the phrase "without lawful justification" was omitted from several instructions; (2) the trial court erred in impaneling a juror who stated that she did not know if she could be fair; (3) the trial court erred in excluding State witness Dexter Johnson's testimony concerning statements made before the shooting as inadmissible hearsay; (4) Hoskins was denied his right to confront his accusers where the trial court excluded one of State witness Sheridan Clark's findings of delinquency; and (5) Hoskins was denied effective assistance of counsel where his attorney failed to impeach a State witness, acquiesced to seating a biased juror, and failed to object to contradictory jury instructions. In his consolidated appeal number 1—00—1014, Ayers argues that (1) the State failed to prove him guilty beyond a reasonable doubt where the eyewitness only glimpsed the shooter for a few seconds and the other witnesses were impeached and inconsistent; and (2) the trial court abused its discretion in sentencing him when it failed to consider his rehabilitative potential. For the following reasons, we reverse and remand Hoskins' conviction in appeal

number 1—00—1470 and affirm Ayers' conviction and sentence in appeal number 1—00—1014.

During Hoskins' trial, the State presented evidence that Hoskins and Ayers attended Cassie Jones' party on the evening of April 22, 1997, at 7308 South Jeffrey Boulevard in Chicago. Before entering the party, Hoskins stated that he needed a gun, so Clifton Johnson retrieved a weapon used by the Gangster Disciples and gave it to Hoskins. Hoskins showed Dexter Johnson his gun while at the party. When the party ended, Todd Jones, a Gangster Disciple, and Billy, a Mickey Cobra, began arguing loudly outside the apartment. Hoskins, Ayers, Todd, Maurice Johnson and Dexter then entered Todd's two-door car and pulled out of the parking space when Billy threw a bottle at the car. Ayers then asked Hoskins for his gun, Hoskins handed Ayers the weapon, and Ayers leaned out the passenger window and fired three shots, killing the victim, Kwasi Page. Hoskins admitted in his handwritten statement that he carried a gun to the party, gave Ayers the weapon after someone threw a bottle at their car, and saw Ayers fire the gun out the car window.

Hoskins responded that his actions were justified in self-defense and presented evidence that when the fight between Billy and Todd, rival gang members, escalated, Cassie ended the party. At that point, members from several different gangs spilled onto the street at the same time and a group of approximately 12 to 15 Mickey Cobras congregated near Todd's car. Billy continued to threaten Todd in a loud and angry manner even after Todd, Hoskins, Ayers and the others entered Todd's car. Billy was standing only a few inches away from the car when he threw the bottle.

At Ayers' trial, Sheridan Clark testified that he had been given probation in juvenile court for possession of a controlled substance and was convicted as an adult for delivery and possession of a controlled substance. While alcohol and drugs were present at Cassie's party, Clark denied drinking or smoking. When the party broke up around 11:30 p.m., Todd, a Boss Pimp, got into an argument with Billy, a Mickey Cobra. The Boss Pimps were aligned with the Gangster Disciples and against the Mickey Cobras. Clark and Page, both Mickey Cobras, left the apartment with several people, including Hoskins and Ayers whom Clark had known for one year. Clark then saw Hoskins, Ayers, Todd, and two others get into Todd's two-door Honda parked in front of the building. Hoskins sat behind the driver, Todd, and Ayers sat in the backseat on the passenger side. As Clark and Page walked home, Clark saw Todd's car pull away from the curb and heard someone throw a bottle at the car. Clark and Page turned to watch for approximately one minute, and Clark saw the passenger window open

and Ayers, sitting in the backseat, lean his whole upper body out the window and fire a black .38-caliber gun approximately three times. Clark and Page were approximately four to five feet away from the car when Ayers fired. Clark testified that there was sufficient light from the light pole to see the car's occupants, but he admitted on cross-examination after viewing photographs of the scene that the alley was "pretty dark." After the first shot, Clark and Page ran down the alley and Page fell to the ground, bleeding. When the police arrived, Clark told them that Ayers was the shooter and stated that he saw Ayers lean out the window for approximately five seconds.

Dexter Johnson next testified that he was 12 years old at the time of the crime and currently incarcerated in a juvenile facility for violating his probation. In April 1997, he was a member of the Boss Pimps. Dexter drank champagne and smoked marijuana at the party but denied that Hoskins showed him anything. When Cassie ended the party and told everyone to leave, Dexter, Ayers, Hoskins, Todd and Maurice left together and piled into Todd's car. Todd drove, Maurice was in the front passenger seat, Dexter sat in the backseat behind Todd, Hoskins sat in the middle of the backseat, while Ayers sat behind the passenger. While they entered the car, approximately 12 to 15 people congregated on the street. As the car drove away, someone threw a bottle at the passenger door. Dexter denied that anyone said anything inside the car after the bottle was thrown and denied seeing Ayers with a gun. Dexter also stated that he never told the police that Ayers asked Hoskins for a gun. Dexter then testified that a gun was fired out of Todd's car, but he did not see who did it.

In his grand jury testimony, however, Dexter testified that Hoskins showed him his gun at the party. After the bottle hit the car, Ayers asked Hoskins for the gun and Hoskins took a revolver from his jacket and handed it to Ayers. Ayers then extended his hand out the window and shot twice. Dexter further testified that Ayers had the gun at his side while switching cars in the parking lot after the incident. In his statement, Dexter stated that Ayers fired the gun twice as Todd sped away. At trial, Dexter stated that he was coerced by the police and assistant State's Attorney when he testified before the grand jury. However, in his grand jury testimony, he stated that he was treated "okay" and "kindly" by the police and assistant State's Attorneys and was not threatened into making a statement. At trial, Dexter testified that when he gave that statement, he could not read. When Ayers' counsel spoke with Dexter in November 1998, Dexter said he was very intoxicated after the party and stated that he did not see Ayers shoot the gun.

Assistant State's Attorney Marci Jacobs testified that she asked

Dexter before and during his grand jury testimony if he had been coerced and he denied it. Dexter also testified before the grand jury that he could read and write English. Assistant State's Attorney Paul Pavlus testified that he interviewed Dexter and prepared his statement with his grandfather present and stated that no one told Dexter what to say. Additionally, Dexter demonstrated his ability to read and write.

Clifton Johnson next testified that he was a member of the Gangster Disciples, was placed on probation in juvenile court for a drug charge the day after the shooting and was arrested on drug charges and found delinquent two months later. Before he, Marquis Watkins, Hoskins, Dexter and other Gangster Disciples entered the party, Hoskins stated that he was not going without a gun. Watkins then drove to 79th and Bennett to retrieve a gun belonging to the Gangster Disciples which was hidden in the basement. Clifton recovered the gun and handed it to Hoskins, who placed it in his pocket before entering the party. Clifton, Hoskins and Watkins stayed at the party drinking and smoking until Todd "got into it with somebody" and the party ended. When everyone left, Todd and Billy were fighting and the Mickey Cobras got involved, made threats and flashed gang signs. When he left the party with Watkins, Clifton saw Todd, Hoskins, Ayers, Dexter and Maurice in Todd's car. As Watkins drove away, Clifton heard several gunshots. Watkins then drove to a nearby parking lot where they met with the group in Todd's car. After everyone exited the cars for a few minutes, Clifton retrieved the gun from underneath the passenger seat of Watkins' car and returned it to its hiding place. A few days later, Clifton showed the police where the gun was hidden. Clifton testified that he never saw Ayers with a gun.

Todd Jones testified that when he arrived at the party, he wished Cassie happy birthday and left. While leaving, Billy said something to Todd, followed him down the stairs and continued to try to provoke Todd as he walked to his car. As Todd reached the car, the rest of the partygoers emptied onto the street and everyone went their separate ways. No blows were exchanged between Todd and Billy and no one prevented Todd or his friends from entering the car. As Todd drove out of the parking space, Billy threw a bottle at the car and immediately Todd heard three gunshots. Todd later denied seeing a bottle being thrown but stated he heard it hit the car. He testified that the shots came from the passenger side of the car and that Ayers fired the gun, but he later denied seeing a gun out the window. In his written statement, Todd stated that he saw Billy throw the bottle at the car and told police that he saw Ayers extend his arm out of the window with the gun in his hand and pull the trigger.

Mary Beth Thomas, a forensic scientist, testified that a partial palm print found on the weapon was not made by Ayers, Hoskins, Maurice or Clifton and she did not compare the print to Todd or Dexter. Another forensic scientist performed gunshot residue tests on Maurice, Todd, Smith, and Watkins. The tests were negative and consistent with not firing a weapon.

Chicago police officer Gruber testified that the mouth of the alley near the scene of the crime was well-lit. On April 24, 1997, Gruber asked Hoskins and his mother to accompany him to the police station. While Hoskins and his mother sat in the backseat of his police car, Gruber overheard their conversation. Gruber then located Clifton, who showed Gruber the weapon hidden in the basement at 79th and Bennett. A forensic scientist testified that the bullet which killed Page was fired from the gun recovered by police.

The juries then found Ayers and Hoskins guilty of first degree murder and the trial court sentenced them to 45 years' imprisonment and 26 years' imprisonment, respectively. After the denial of their posttrial motions, Ayers and Hoskins filed these timely appeals, which were later consolidated.

Hoskins first challenges the propriety of the jury instructions. The jury instructions given by the trial court included Illinois Pattern Jury Instructions, Criminal, No. 7.01A (3d ed. 1992) (hereinafter IPI Criminal 3d), an instruction which defines first degree murder, IPI Criminal 3d No. 7.02A (Supp. 1996), which is a first degree murder issue instruction when second degree murder is not also an issue, and IPI Criminal 3d No. 7.06A, which is a first and second degree murder issues instruction. The jury was also given IPI Criminal 3d No. 7.05A, an instruction which defines a mitigating factor for the purposes of second degree murder, and IPI Criminal 3d No. 24—25.06, a self-defense instruction.

The first degree murder issue instruction when second degree murder is not also an issue, IPI Criminal 3d No. 7.02A, stated:

"To sustain the charge of first degree murder, the State must prove the following propositions:

*First:* That the defendant, or one for whose conduct he is legally responsible, performed the acts which caused the death of Kwasi Page; and

*Second:* That when the defendant, or one for whose conduct he is legally responsible, did so,

he intended to kill or do great bodily harm to Kwasi Page or another; or

he knew that his acts would cause death to Kwasi Page or another; or

he knew that his acts created a strong probability of death or great bodily harm to Kwasi Page or another.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty.''

The first and second degree murder issue instruction, IPI Criminal 3d No. 7.06A, provided:

"To sustain either the charge of first degree murder or the charge of second degree murder, the State must prove the following propositions:

*First*: That the defendant, or one for whose conduct he is legally responsible, performed the acts which caused the death of Kwasi Page; and

*Second*: That when the defendant, or one for whose conduct he is legally responsible, did so,

he intended to kill or do great bodily harm to Kwasi Page or another; or

he knew that such acts would cause death to Kwasi Page or another; or

he knew that such acts created a strong probability of death or great bodily harm to Kwasi Page or another; and

*Third*: That the defendant was not justified in using the force which he used.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, your deliberations should end, and you should return a verdict of not guilty.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, then you should go on with your deliberations to decide whether a mitigating factor has been proved so that the defendant is guilty of the lesser offense of second degree murder instead of first degree murder.

You may not consider whether the defendant is guilty of the lesser offense of second degree murder until and unless you have first determined that the State has proved beyond a reasonable doubt each of the previously stated propositions.

The defendant has the burden of proving by a preponderance of the evidence that a mitigating factor is present so that he is guilty of the lesser offense of second degree murder instead of first degree murder. By this I mean that you must be persuaded, considering all the evidence in this case, that it is probably more true than not

true that the following mitigating factor is present: that the defendant, at the time he performed the acts which caused the death of Kwasi Page, believed the circumstances to be such that they justified the deadly force he used, but his belief that such circumstances existed was unreasonable.

If you find from your consideration of all the evidence that the defendant has proved by a preponderance of the evidence that a mitigating factor is present so that he is guilty of the lesser offense of second degree murder instead of first degree murder, you should find the defendant guilty of second degree murder.

If you find from your consideration of all the evidence that the defendant has not proved by a preponderance of the evidence that a mitigating factor is present so that he is guilty of the lesser offense of second degree murder instead of first degree murder, you should find the defendant guilty of first degree murder."

The definitional instruction for first degree murder, IPI Criminal 3d No. 7.01A, did not include the phrase "without lawful justification," despite Hoskins' self-defense argument. It read:

"A person commits the offense of first degree murder when he, or one for whose conduct he is legally responsible, kills an individual if, in performing the acts which cause the death,

he, or one for whose conduct he is legally responsible, intends to kill or do great bodily harm to that individual or another; or

he, or one for whose conduct he is legally responsible, knows that such acts will cause death to that individual or another; or

he, or one for whose conduct he is legally responsible, knows that such acts create a strong probability of death or great bodily harm to that individual or another."

Hoskins argues that the jury instructions were contradictory and inconsistent, depriving him of his right to a trial by jury and due process. The State responds that Hoskins waived this issue by failing to include it in his posttrial motion and that the plain error rule does not apply to avoid the application of waiver. Hoskins concedes that he failed to object to the erroneous jury instructions at trial and did not include the issue in his posttrial motion, but he argues that the instructions contained substantial defects under Supreme Court Rule 451(c) and, thus, warrant appellate review. 177 Ill. 2d R. 451(c).

■ While the failure to object to alleged errors at trial and include the objection in a posttrial motion generally results in waiver of the issue on appeal, Rule 451(c) provides that "substantial defects" in jury instructions "are not waived by failure to make timely objections thereto if the interests of justice require." 177 Ill. 2d R. 451(c); *People v. Williams*, 181 Ill. 2d 297, 317-18, 692 N.E.2d 1109, 1120-21 (1998). This rule has been interpreted as a plain error exception to the waiver

rule and allows a reviewing court to consider issues despite waiver if the error is so fundamental and of such magnitude that the defendant was denied a fair trial or if the evidence is closely balanced. *People v. Rios*, 318 Ill. App. 3d 354, 361, 742 N.E.2d 409, 414 (2000). Rule 451(c) applies only "[w]here there are such grave errors in instructions so as to affect that very important consideration, justice." *People v. Jenkins*, 69 Ill. 2d 61, 66, 370 N.E.2d 532, 534 (1977). Fundamental fairness requires the trial court to give proper instructions on the elements of the offense in order to insure a fair determination of the case and the failure to do so constitutes plain error. *Williams*, 181 Ill. 2d at 318, 692 N.E.2d at 1121. Where conflicting instructions are given, one of which is a correct statement of the law and the other is an incorrect statement of the law, the error is not harmless and constitutes grave error. *People v. Haywood*, 82 Ill. 2d 540, 545, 413 N.E.2d 410, 413 (1980); *Jenkins*, 69 Ill. 2d at 67, 370 N.E.2d at 534. Thus, we will review the merits of Hoskins' contentions.

Specifically, Hoskins asserts that IPI Criminal 3d No. 7.02A (Supp. 1996) only applies when first degree murder, and not second degree murder, is at issue and instructs the jury to find defendant guilty without addressing Hoskins' mitigating factor. IPI Criminal 3d No. 7.06A, in contrast, applies when both first degree murder and second degree murder are at issue and defendant presented evidence of a mitigating factor. Here, where Hoskins presented evidence of a mitigating factor, self-defense, the charges of first degree murder and second degree murder were both at issue. Thus, Hoskins contends, IPI Criminal 3d No. 7.02A (Supp. 1996) was legally incorrect for this situation and IPI Criminal 3d No. 7.06A was the only correct issue instruction. By giving the jury both IPI Criminal 3d No. 7.02A (Supp. 1996) and IPI Criminal 3d No. 7.06A, the jury was forced to choose between two contradictory instructions which related to a central issue in the case, self-defense. Based on these instructions, the jury could have improperly ended its deliberations without considering Hoskins' self-defense argument and convicted Hoskins on the basis of the incorrect instruction. This error, along with the failure to add the phrase "without lawful justification" to the first degree murder definitional instruction, confused the jury and requires reversal. The State responds that there was no conflict in the jury instructions and that, together, they adequately apprised the jury of the applicable law.

We find *People v. Jenkins*, 69 Ill. 2d 61, 370 N.E.2d 532 (1977), instructive. In *Jenkins*, the central issue at the defendant's trial for attempted murder was whether the level of force the defendant used was justified. The trial court gave the jury two attempted murder issue instructions: one included only two elements and instructed the

jury to find the defendant guilty of attempted murder if the defendant performed an act that constituted a substantial step towards the commission of the crime of murder and he had the intent to commit murder, and omitted any reference to the fact that the defendant must not have been justified in using the force he employed; and a second instruction, which correctly stated the law and included the necessary three elements, including that the defendant must not have been justified in using the force he employed. *Jenkins*, 69 Ill. 2d at 64-65, 370 N.E.2d at 533. The *Jenkins* court held that each of the instructions was self-contained and differed from the other so as to be inconsistent and contradictory. *Jenkins*, 69 Ill. 2d at 66, 370 N.E.2d at 534.

*Jenkins* then stated that the court has the duty to inform the jury as to the law, but where the instructions are contradictory, the jury cannot perform its constitutional function.

"This inability is the fault of the court, whose duty it is to give the jury proper guidance, not to generate confusion, as was the case here. It is well established that the giving of contradictory instructions on an essential element in the case is prejudicial error, and is not cured by the fact that another instruction is correct. While it is true that an instruction may be inaccurate, and other instructions may remove this error, such cannot be so when the instructions are in direct conflict with one another, one stating the law correctly and the other erroneously. This is particularly true where the instruction defines the issues in the case or is mandatory in character. [Citations.]

Where the instructions are contradictory[,] the jury is put in the position of having to select the proper instruction[,] a function exclusively that of the court. As far as can be known, defendant might well have been convicted on the basis of the erroneous instruction. Certainly, a person should not stand to lose his liberty because a jury has received equivocal instructions." *Jenkins*, 69 Ill. 2d at 66-67, 370 N.E.2d at 534.

Further, our supreme court later held that the complete omission of part of the definition of the crime charged deprives the jury of the guidance it must have to properly decide the case. *People v. Ogunsola*, 87 Ill. 2d 216, 223, 429 N.E.2d 861, 864-65 (1981); see also *Haywood*, 82 Ill. 2d at 545, 413 N.E.2d at 413.

■ Here, Hoskins' jury was given similar, contradictory and inconsistent issue instructions on first and second degree murder. Hoskins presented a defense of self-defense and instructed the jury on the existence of this mitigating factor. IPI Criminal 3d No. 7.02A (Supp. 1996) instructed the jury to find Hoskins guilty if the State proved only two elements of the crime: that Hoskins or Ayers performed the acts which caused Page's death and that he did so intending to kill or knowing

that his acts would cause death or great bodily harm. As in *Jenkins*, this instruction omitted any reference to the fact that the State must prove that Hoskins was not justified in using the force he employed. The jury was also given IPI Criminal 3d No. 7.06A, which correctly stated the law and instructed the jury to find Hoskins guilty only if the State proved all three elements of the crime, including the fact that Hoskins was not justified in using the force employed. IPI Criminal 3d No. 7.06A also explained the relationship between first and second degree murder as well as the burden of proof on Hoskins' mitigating factor. Thus, the jury was presented with two self-contained, inherently contradictory and inconsistent issue instructions defining the elements requisite for a finding of guilty. As in *Jenkins*, the giving of these contradictory instructions on an essential element in the case was grave error which mandates reversal.

The State attempts to distinguish *Jenkins* and instead argues that *People v. Rios*, 318 Ill. App. 3d 354, 742 N.E.2d 409 (2000), is factually similar to the present case. The jury in *Rios* was instructed on first and second degree murder and self-defense and given IPI Criminal 3d No. 7.01A and IPI Criminal 3d No. 7.06A. *Rios*, 318 Ill. App. 3d at 359, 742 N.E.2d at 412. However, the *Rios* jury was not also given the contradictory, conflicting, and incorrect instruction IPI Criminal 3d No. 7.02A that the Hoskins jury received. Thus, *Rios* is inapplicable to this issue.

We find additional support for our decision in the committee note for IPI Criminal 3d No. 7.02A (Supp. 1996). That note instructs the court to use that instruction "to set forth the issues in first degree murder *only* when the court is not also instructing on the lesser offense of second degree murder. When the court is also instructing on second degree murder, instead of using a separate issues instruction for first degree murder, give the combined issues Instruction 7.04A or 7.06A." (Emphasis added.) IPI Criminal 3d No. 7.02A, Committee Note (Supp. 1996). Thus, the IPI committee note dictates that only IPI Criminal 3d No. 7.06A was appropriate in this case.

Additionally, Hoskins argues that the fact that the first degree murder definitional instruction, IPI Criminal 3d No. 7.01A, lacked the phrase "without lawful justification" gave the jury an incorrect definition of the crime charged because it eliminated a disputed element. The IPI committee note for this instruction instructs the court that if the jury is given a self-defense instruction, the court should insert the words "without lawful justification" so that the instruction reads: "A person commits the offense of first degree murder when he, or one for whose conduct he is legally responsible, kills an individual without lawful justification if ***." See IPI Criminal 3d No. 7.01A, Committee

Note. Hoskins contends that the fact that IPI Criminal 3d No. 7.06A contained the justification language served only to confuse the jury and did not cure the error. In response, the State first relies on *Rios.*

In *Rios,* the jury received IPI Criminal 3d No. 7.06A, IPI Criminal 3d No. 7.05A, IPI Criminal 3d No. 24—25.06, and IPI Criminal 3d No. 7.01A, which lacked the phrase "without lawful justification." *Rios* distinguished *Jenkins* and found that the jury was not forced to choose between two inconsistent issues instructions and found no contradictions between the instructions. It acknowledged that the "without lawful justification" language was erroneously omitted from the definitional instruction, but held that the issues instructions properly instructed the jury on the elements of the offense, and thus, the defendant was not deprived of a fair trial. *Rios,* 318 Ill. App. 3d at 362, 742 N.E.2d at 415.

However, in the present case, the issues instructions did not properly advise the jury of the elements of first and second degree murder where IPI Criminal 3d No. 7.02A (Supp. 1996) and IPI Criminal 3d No. 7.06A directly contradicted each other and further contradicted the first degree murder definitional instruction, IPI Criminal 3d No. 7.01A, which lacked the "without lawful justification" language. The jury was forced to choose between two inconsistent issues instructions, and thus, the missing phrase "without lawful justification" was not harmless error. We need not decide whether the failure to include the "without lawful justification" language in the first degree murder definitional instruction is reversible error by itself, but hold that this failure, coupled with the giving of contradictory and inconsistent issue instructions on first and second degree murder, confused the jury and deprived Hoskins of a fair trial.

The State also contends that the jury was properly instructed as to the applicable law and that the combination of the instructions given and closing arguments cured any error. However, our supreme court, citing *Jenkins* and *Haywood,* rejected a similar argument in *People v. Alvine,* 173 Ill. 2d 273, 671 N.E.2d 713 (1996). While jury instructions should be considered as a whole and not in isolation, the court stated:

> "This proposition rests on the assumption that the jury instructions clearly and properly inform the jurors of the law. [Citations.] But when inconsistent instructions are presented to a jury, the jury's ability to perform its function is inhibited because the jury has not been adequately apprised of the law to be applied. [Citations.] When the instructions are confusing and create a situation in which the jurors believe they are forced to choose between conflicting elements within the instructions, as here, the instruc-

754

tions as a whole cannot be considered curative of the confusion."
*Alvine*, 173 Ill. 2d at 290, 671 N.E.2d at 721.
Similarly, we reject the State's argument where Hoskins' jury instructions were contradictory, confusing, and inconsistent.

Because we find that the jury instructions deprived Hoskins of a fair trial, we reverse his conviction and remand for a new trial. Thus, we need not address Hoskins' other arguments on appeal. After thoroughly reviewing the evidence, we are convinced that it was sufficient to support a finding of guilty beyond a reasonable doubt. Under these circumstances, a retrial of defendant would not violate double jeopardy principles. *People v. Stafford*, 325 Ill. App. 3d 1069, 1075, 759 N.E.2d 115, 120 (2001).

In his appeal, Ayers first argues that the State failed to prove that Ayers was the shooter and, thus, failed to prove him guilty beyond a reasonable doubt where Clark stated he only saw the shooter for approximately five seconds, the other State witnesses were impeached and inconsistent and there was no physical evidence linking Ayers to the shooting. The State responds that it overwhelmingly proved Ayers' guilt with eyewitness testimony identifying Ayers as the shooter, several other witnesses who implicated Ayers, and corroborating evidence.

■ When the defendant challenges the sufficiency of the evidence, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Smith*, 185 Ill. 2d 532, 541, 708 N.E.2d 365, 369 (1999). The trier of fact bears the responsibility to determine the credibility of witnesses, to resolve conflicts or inconsistencies in their testimony, to assess the weight to be given to their testimony, and to draw reasonable inferences from all of the evidence. *People v. Cochran*, 323 Ill. App. 3d 669, 679, 753 N.E.2d 1155, 1163 (2001).

■ After reviewing the record in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found Ayers guilty beyond a reasonable doubt. Despite the absence of prints on the weapon, there was other, sufficient evidence to connect Ayers to the shooting. Clark testified that he had known Hoskins and Ayers for a year before the shooting. After Billy and Todd argued outside the apartment building, Clark saw Ayers, Hoskins and others enter Todd's car with Ayers sitting in the backseat on the passenger side. As the car pulled away from the curb, Clark heard someone throw a bottle at Todd's car. Clark and Page turned to watch the incident for one minute, and Clark saw Ayers lean his whole upper body out of the passenger window for approximately five seconds and fire a .38-caliber

handgun three times. Clark testified that he had "enough light" and was able to see Ayers in the car because of the light from a nearby light pole and the car headlights. Further, Clark was only four to five feet from the car when Ayers fired. When the police arrived shortly after the shooting, Clark told them that Ayers was the shooter. The testimony of a single witness is sufficient to convict and it is not the reviewing court's position to retry a defendant. *People v. Matthews*, 299 Ill. App. 3d 914, 925, 702 N.E.2d 291, 298-99 (1998).

Additionally, other witnesses supported Clark's testimony. Dexter testified that he sat in Todd's car behind the driver and Ayers sat behind the passenger seat. At trial, Dexter was impeached with his grand jury testimony where he stated that after the bottle hit the car, Ayers asked Hoskins for his gun and Hoskins handed it to Ayers. Ayers then extended his arm out the window and shot twice. While Dexter claimed he was coerced into testifying before the grand jury, both Assistant State's Attorneys Jacobs and Pavlus testified that Dexter told them he was not threatened or coerced. Additionally, Todd testified that after Billy threw the bottle, Todd heard three gunshots coming from the passenger side of the car and then stated that Ayers fired the gun. Todd also told the police that he saw Ayers extend his arm out of the window with a gun in his hand and pull the trigger.

While some of these witnesses admitted drinking alcohol and smoking marijuana at the party and had criminal adjudications, all of this information was before the jury when it evaluated their credibility. Further, the jury was also aware of the witnesses' gang affiliations, Dexter's conflicting testimony, and the inconsistencies between the witnesses' accounts. The jury was in the best position to weigh the evidence and determine the credibility of Clark, Dexter, Todd and Clifton, and we will not substitute our judgment for its on questions concerning witness credibility. *People v. Moss*, 205 Ill. 2d 139, 164-65 (2001). Accordingly, we reject Ayers' argument.

■ Secondly, Ayers argues that the trial court abused its discretion in sentencing him to 45 years' imprisonment when it failed to take his rehabilitative potential into consideration, including his young age and lack of violent criminal background. The State responds that the sentence was within the appropriate range and the trial court properly considered all factors.

At the sentencing hearing, Delores Carter testified in mitigation that she knew Ayers when he was involved in many programs, including the senior citizen and homeless programs, with the Chicago Boys and Girls Club from 1981 to 1993. Martha Wilkerson testified that she saw Ayers two to three times a week when he would help her in her beauty salon. She stated that Ayers was nice and respectable, but she

last saw him in 1994. Thomas Merriweather testified that Ayers helped maneuver his wheelchair while grocery shopping two or three times between 1994 and 1996. June Ayers, Ayers' mother, testified that Ayers always helped people. In aggravation, the State submitted a victim impact statement from Page's parents. In determining Ayers' sentence, the trial court stated that it took "into consideration the witnesses who have testified in [Ayers'] behalf; also, the presentence investigation that has been presented to [it]."

The trial court is in the best position to make a reasoned decision as to the appropriate punishment in each case, and we will not reverse its decision unless it has abused its discretion. *People v. Anderson*, 325 Ill. App. 3d 624, 637, 759 N.E.2d 83, 94 (2001). First degree murder carries a sentencing range of 20 to 60 years. 730 ILCS 5/5—8—1(a)(1)(a) (West 1996). Thus, Ayers' 45-year sentence falls within this statutory range. Further, our review of the record shows that the trial court properly considered the mitigating factors and Ayers' rehabilitative potential testified to by the witnesses and the information concerning Ayers' prior convictions for possession of a controlled substance and violation of probation contained within the presentence investigation report. Ayers' contention that the trial court gave "absolutely no consideration" to Ayers' rehabilitative potential is without merit. The court weighed these factors with the seriousness of the crime when determining Ayers' sentence. An appellate court must not substitute its judgment for that of the sentencing court merely because it would have weighed the factors differently. *People v. Jones*, 295 Ill. App. 3d 444, 455, 692 N.E.2d 762, 770 (1998). Thus, the trial court did not abuse its discretion in sentencing Ayers to 45 years' imprisonment.

For the foregoing reasons, we reverse Hoskins' conviction for first degree murder and remand for a new trial in appeal number 1—00—1470, and affirm Ayers' conviction and sentence in appeal number 1—00—1014.

No. 1—00—1470, Reversed and remanded.
No. 1—00—1014, Affirmed.

HOFFMAN, P.J., and HARTMAN, J., concur.