NOTICE

Decision filed 07/31/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 190154-U

NO. 5-19-0154

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 17-CF-252 |
| | ) | |
| RODERICK S. OATS JR., | ) | Honorable |
| | ) | Jerry E. Crisel, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BOIE delivered the judgment of the court.
Justices Welch and Cates concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where the jury was given two instructions defining the elements requisite for a finding of guilty for first-degree murder and each instruction was self-contained and differed from the other with respect to the issue of justifiable use of force so as to be inconsistent and contradictory, a new trial was required despite the defendant's failure to object to the erroneous instruction.

¶ 2    Following a jury trial, the defendant, Roderick S. Oats Jr., was convicted of first-degree murder in violation of section 9-1(a)(1) of the Criminal Code of 2012 (Code) (720 ILCS 5/9-1(a)(1) (West 2016)) and aggravated battery with a firearm in violation of section 12-3.05(e)(1) of the Code (*id.* § 12-3.05(e)(1)). Additionally, the jury found that during the offense of first-degree murder, the defendant personally discharged a firearm that proximately caused the death pursuant to section 5-8-1(a)(1)(d)(iii) of the Unified Code of Corrections. See 730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2016). At sentencing, the aggravated battery with a firearm conviction merged into the first-

degree murder conviction, and the defendant was sentenced to 65 years' imprisonment, followed by 3 years of mandatory supervised release.

¶ 3     The defendant raises several issues on appeal. This court, however, finds that the issue with regard to the jury instructions, where the trial court gave the jury conflicting jury instructions on first-degree murder, one of which omitted the considerations of justification and second-degree murder, to be dispositive. For the following reasons, we reverse the defendant's conviction for first-degree murder and remand for a new trial on that basis.

¶ 4                                    I. BACKGROUND

¶ 5     The record on appeal reveals the following facts relevant to our analysis. On July 10, 2017, the State charged the defendant by information, and subsequently by indictment on July 25, 2017, with three counts of first-degree murder. The State charged two counts pursuant to section 9-1(a)(1) of the Code (720 ILCS 5/9-1(a)(1) (West 2016)) and one count pursuant to 9-1(a)(2) of the Code (*id.* § 9-1(a)(2)). On July 25, 2017, the State charged the defendant by subsequent indictment with the same three counts of first-degree murder and one count of aggravated battery with a firearm pursuant to section 12-3.05(e)(1) of the Code (*id.* § 12-3.05(e)(1)). All of the charges related to conduct that occurred on July 8, 2017. Additionally, the State alleged in each count of first-degree murder that the defendant, during the commission of the offense, was armed with a firearm and personally discharged the firearm that proximately caused the death.

¶ 6     The defendant's jury trial commenced on August 23, 2018. The defendant raised the affirmative defense of self-defense.

¶ 7     The State called Alexis Bailey, who testified that she had known the victim, Carlos Johnson, for 20 years, and they shared a child. Bailey and Carlos ran in the same circle as the defendant, and in March 2017, she had cheated on Carlos with the defendant. Bailey stated that

she told Carlos about the cheating at the end of March 2017, and after that, she never saw Carlos and the defendant together again.

¶ 8   Dakota Sledge also testified. Sledge lived with his parents, the location where the defendant shot Carlos, off and on for about 10 or 11 years. Sledge was good friends with both Carlos and the defendant. Sledge testified that on July 8, 2017, between approximately 11 a.m. and 12 p.m., he was hanging out at his house in his room smoking marijuana with the defendant, his friend Braden, and Braden's girlfriend. At some point, they left the house with Sledge, driving, and the defendant, in the passenger seat, and dropped Braden and his girlfriend off at Braden's mother's house in Sledge's vehicle. Sledge and the defendant then returned to Sledge's house, parked in the driveway, and sat in the car while they waited for someone to deliver more marijuana. The two men received the marijuana and were about to leave again to go pick up Braden and his girlfriend, but the defendant asked Sledge to wait before he drove off so that the defendant could roll up a blunt of marijuana.

¶ 9   Sledge stated that as soon as the defendant finished rolling the blunt and went to light it, Carlos appeared out of nowhere outside the passenger side window of Sledge's vehicle, where the defendant was sitting, and punched the defendant. According to Sledge, the defendant said, "You snaked me," and Carlos, while walking around the vehicle to Sledge's side, responded, "If you have a problem, get out and fight." When Carlos reached Sledge's side of the vehicle, the defendant got out of the vehicle, pulled out a gun, placed it over the vehicle, and started shooting. Sledge stated that he knew the defendant had the gun, and prior to him pulling it out, it was in the defendant's pants. Sledge did not see any weapons or objects in Carlos's hands.

¶ 10   According to Sledge, the defendant was standing outside the passenger side door when the first shot was fired, and Carlos was standing on the driver's side, right behind the side-view mirror near the front hood of the vehicle. Sledge stated that after he heard the first shot, he ducked down

and then heard three or four more shots ring out. Out of the corner of his eye, Sledge saw the defendant walking behind the vehicle while he was still shooting. Shortly thereafter, the shooting stopped, and the defendant took off running between Sledge's house and the neighboring house, while Carlos was lying on the hood of the vehicle, trying to work his way around to the other side. Sledge further stated that once Carlos made his way around to the passenger side of the vehicle, he got in the vehicle, and told Sledge to get him to the hospital.

¶ 11    Once at the hospital Carlos succumbed to his injuries, multiple gunshot wounds. An autopsy was performed and listed Carlos's manner of death as a homicide.

¶ 12    The defendant testified that he and Alexis Bailey were engaged in a sexual relationship between late February to March 2017, and that in March, he and Carlos had a conversation about it. The defendant stated that he and Carlos "squashed it" and he "shook his hand, left it alone." The defendant testified that around noon on the day that he shot Carlos, he was hanging out and smoking marijuana with Sledge, Braden, and Braden's girlfriend. He and Sledge dropped Braden and his girlfriend off at Braden's mother's house, drove around, and smoked a little bit more before returning to Sledge's house where they were "just chilling in the driveway." The defendant did not know that Carlos was coming to Sledge's house that day. The defendant was sitting in the passenger seat of Sledge's vehicle, and Sledge was sitting in the driver's seat. The defendant felt something hit him in the face, so he looked up and said, "What the fuck," to which Carlos responded with either, "Fuck you. If you got a problem, get out of the car," or "Bitch, get out of the car." The defendant testified that as he was getting out of the vehicle, he saw something black in Carlos's hand that the defendant believed to be a gun. The defendant testified that it felt like he was hit with a metal object and thought that Carlos had hit him with a gun, so when the defendant got out of the vehicle, he started shooting to defend himself. He testified that he was scared for his life, because he had already been hit with something, that his "eye was leaking," and that all he

4

could see "was blood." The defendant testified that he got out of the car, started shooting, ran around the car while still shooting, and then took off running. The defendant stated that he was not purposely trying to kill or shoot Carlos, but at the time, he felt that his life was in danger.

¶ 13    The defendant testified that although he did not have a FOID card or a license to carry, he nevertheless carried a firearm on his person every day for the past two years, stating, "I would rather have it to defend myself than get killed." He testified that he shot Carlos five times, "rapid-fire," with a 9-millimeter Taurus handgun, and as he was shooting, he ran around the vehicle to try to get away, and then took off running through the middle of two houses and down an alley. At some point thereafter, a woman the defendant had never seen before stopped and asked if he was okay, because he was covered in blood. The defendant stated that he lied and told her that he got jumped. The woman asked the defendant if he wanted her to call the police, but the defendant said no and asked if she would give him a ride; she drove the defendant to Benton, Illinois. The defendant testified that when he got to Benton, he played with his son, went to sleep, and was woken up later that evening by the police who arrested him.

¶ 14    On cross-examination, the State asked the defendant if he shot Carlos because he was afraid that Carlos was going to beat him up physically with his hands, which the defendant denied. Thereafter, the defendant explained that he was not afraid of Carlos because he was not scared to fight anybody and that, "[i]f you want to fight, I'll fight you, you know. I've grown up fighting my whole life." The defendant said that if Carlos had invited him to fight, he would have accepted the invitation. The defendant testified that while he was running from the scene down the alley, the gun was in his pocket, and at some point, he threw the gun into some bushes, stating, "I didn't have no real reason. I just threw it. I just shot a gun. I was scared ***."

5

¶ 15   Several other witnesses testified to what they observed shortly before and after the shooting. The State also presented several witnesses to describe the crime scene and the evidence collected and tested in the case.

¶ 16   After the close of evidence, the trial court held a jury instructions conference in the trial court's chambers. There is no transcript of the conference within the record on appeal. The State and the defendant both submitted proposed jury instructions and it appears that the parties agreed to a set of instructions which, once back in the courtroom, they reviewed to finalize the order of the instructions and whether there were any further objections or corrections to be made, in addition to deciding the order the instructions were to be given. In the present case, the defendant was charged with first-degree murder, the defendant had asserted the affirmative defense of self-defense, and the jury was to consider a mitigating factor for second-degree murder, that the defendant had an unreasonable belief in the need for self-defense. The State submitted, *inter alia*, Illinois Pattern Jury Instructions, Criminal, No. 7.01 (4th ed. 2000) (hereinafter IPI Criminal No. 7.01), a first-degree murder definitional instruction, which correctly stated the law as related to this case:

> "A person commits the offense of first degree murder when he kills an individual without lawful justification if, in performing the acts which cause the death, he intends to kill or do great bodily harm to that individual, or he knows that such acts will cause death to that individual, or he knows that such acts create a strong probability of death to that individual, or he knows that such acts create a strong probability of death or great bodily harm to that individual." IPI Criminal No. 7.01.

¶ 17   The State also submitted Illinois Pattern Jury Instructions, Criminal, No. 7.02 (4th ed. 2000) (hereinafter IPI Criminal No. 7.02). The instruction as submitted did not include the third proposition to be used when the jury is to be instructed on self-defense, *i.e.*, that the defendant was not justified in using the force which he used. As IPI Criminal No. 7.02 is not to be used when the

jury is to be instructed on second-degree murder, the instruction also failed to include the necessary language for the lesser mitigated offense of first-degree murder. The instruction as given stated:

> "To sustain the charge of first degree murder, the State must prove the following propositions:
>
> First Proposition: That the defendant performed the acts which caused the death of Carlos T. Johnson;and
>
> Second Proposition: That when the defendant did so, he intended to kill or do great bodily harm to Carlos T. Johnson; or he knew that his acts would cause death to Carlos T. Johnson; or he knew that his acts created a strong probability of death or great bodily harm to Carlos T. Johnson.
>
> If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.
>
> If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty." IPI Criminal No. 7.02.

¶ 18    The State additionally submitted a second issues instruction, Illinois Pattern Jury Instructions, Criminal, No. 7.06 (approved Jan. 30, 2015) (hereinafter IPI Criminal No. 7.06), which is the correct instruction when the jury is to be instructed on both first-degree and second-degree murder—belief in justification. That instruction stated:

> "To sustain either the charge of first degree murder or the charge of second degree murder, the State must prove the following propositions:
>
> First Proposition: That the defendant performed the acts which caused the death of Carlos T. Johnson; and
>
> Second Proposition: That when the defendant did so, he intended to kill or do great bodily harm to Carlos Johnson, or he knew that such acts would cause death to Carlos T. Johnson; or he knew that such acts created a strong probability of death or great bodily harm to Carlos T. Johnson; and
>
> Third Proposition: That the defendant was not justified in using the force which he used.
>
> If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, your

7

deliberations should end, and you should return a verdict of not guilty.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, then you should go on with your deliberations to decide whether a mitigating factor has been proved so that the defendant is guilty of the lesser offense of second degree murder instead of first degree murder.

You may not consider whether the defendant is guilty of the lesser offense of second degree murder until and unless you have first determined that the State has proved beyond a reasonable doubt each of the previously stated propositions.

The defendant has the burden of proving by a preponderance of the evidence that a mitigating factor is present so that he is guilty of the lesser offense of second degree murder instead of first degree murder. By this I mean that you must be persuaded, considering all the evidence in this case, that it is more probably true than not true that the following mitigating factor is present: that the defendant, at the time he performed the acts which caused the death of Carlos T. Johnson, believed the circumstances to be such that they justified the deadly force he used, but his belief that such circumstances existed was unreasonable.

If you find from your consideration of all the evidence that the defendant has proved by a preponderance of the evidence that a mitigating factor is present so that he is guilty of the lesser offense of second degree murder instead of first degree murder, you should find the defendant guilty of second degree murder.

If you find from your consideration of all the evidence that the defendant has not proved by a preponderance of the evidence that a mitigating factor is present so that he is guilty of the lesser offense of second degree murder instead of first degree murder, you should find the defendant guilty of first degree murder." IPI Criminal No. 7.06.

¶ 19    The defendant did not object to the proposed jury instructions, and as such, each was given in the format summarized above. Before closing arguments, the trial court read the jury instructions agreed to by the parties. In closing, the State commented on the burden of proof, stating that the defendant "couldn't carry any burden of proof to prove any mitigating factor to get any second-degree murder," and that the defendant did not act in self-defense when he shot Carlos. Defense counsel also briefly commented on the burden of proof, noting that the burden of proof lies on the

8

State. In rebuttal, the State reiterated that the defendant declined Carlos's invitation to get out of the vehicle and fight and argued that the defendant's testimony that Carlos did not have a gun meant that he admitted he was not justified in using self-defense.

¶ 20　Shortly thereafter, the jury retired to deliberate. The jury returned with guilty verdicts on the charges of first-degree murder and aggravated battery with a firearm. Additionally, the jury found that during the offense of first-degree murder, the defendant personally discharged a firearm that proximately caused the death, resulting in a 25-year firearm sentencing enhancement.

¶ 21　A sentencing hearing was held on November 29, 2018. The parties agreed that the aggravated battery conviction would merge into first-degree murder because the shots that the defendant fired were part of a single course of conduct. After the hearing, the trial court sentenced the defendant to 40 years' incarceration, in addition to 25 years' incarceration for the mandatory firearm enhancement, for a total of 65 years' imprisonment to be served at 100%, followed by 3 years of mandatory supervised release.

¶ 22　　　　　　　　　　　　　　II. ANALYSIS

¶ 23　As discussed, the jury convicted the defendant of first-degree murder under sections 9-1(a)(1) and 9-1(a)(2) of the Code. The defendant contends that the trial court erred by giving the jury conflicting instructions on first-degree murder, thus denying him a fair trial. The trial court gave the jury two issues instructions for first-degree murder, IPI Criminal Nos. 7.02 and 7.06, respectively. The defendant contends that the trial court erred by using both IPI Criminal No. 7.02 (the elements of first-degree murder) and IPI Criminal No. 7.06 (the elements of first-degree murder and second-degree murder). The committee notes for IPI Criminal No. 7.02 provide that this instruction is to be given "only when the court is not also instructing on the lesser offense of second-degree murder," and where the court is also instructing the jury on second-degree murder,

9

the combined issues instruction 7.04 or 7.06 should be used. *People v. Peoples*, 2020 IL App (1st) 161735-U, ¶ 49.

¶ 24　The first issues instruction, IPI Criminal No. 7.02, omitted the requirements applicable to the situation here, where the jury is to be instructed on both first-degree murder and second-degree murder. The defendant alleged that the mitigating factor that applied was that he believed his use of force was justified but his belief was unreasonable. A second issues instruction was given, IPI Criminal No. 7.06, which included the necessary language for the considerations of justification and second-degree murder.

¶ 25　The jury was also given Illinois Pattern Jury Instructions, Criminal, No. 7.05 (approved Jan. 30, 2015), an instruction which defines a mitigating factor for the purposes of second-degree murder, and Illinois Pattern Jury Instructions, Criminal, No. 24-25.06 (4th ed. 2000) (use of force in defense of a person). Further, the definitional instruction, IPI Criminal No. 7.01, included the element, "without lawful justification," required whenever, as here, an instruction is to be given on an affirmative defense contained in Article 720. See committee comments to IPI Criminal No. 7.01.

¶ 26　The State argues that the defendant forfeited this issue by failing to object to the error at trial and to raise the issue in a posttrial motion. The defendant concedes that trial counsel did not object to the State's proposed jury instructions and did not preserve the issue in a posttrial motion. The defendant asks this court, however, to consider the failure to object pursuant to Illinois Supreme Court Rule 451(c) (eff. Apr. 8, 2013), which provides that, for criminal jury instructions, "substantial defects are not waived by failure to make timely objections thereto if the interests of justice require." Rule 451(c) carves out a limited exception to the general rule to correct "grave errors" and errors in cases "so factually close that fundamental fairness requires that the jury be properly instructed." *People v. Hopp*, 209 Ill. 2d 1, 7 (2004).

10

¶ 27    Rule 451(c) applies only "[w]here there are such grave errors in instructions so as to affect that very important consideration, justice." *People v. Jenkins*, 69 Ill. 2d 61, 66 (1977). "Although the giving of jury instructions is generally reviewed for an abuse of discretion, when the question is whether the jury instructions accurately conveyed to the jury the law applicable to the case, our review is *de novo*." *People v. Pierce*, 226 Ill. 2d 470, 475 (2007).

¶ 28    Fundamental fairness requires the trial court to give proper instructions on the elements of the offense in order to ensure a fair determination of the case and the failure to do so constitutes plain error. *People v. Williams*, 181 Ill. 2d 297, 318 (1998). It is the trial court's burden to ensure the jury is given the essential instructions as to the elements of the crime charged, the presumption of innocence, and the question of burden of proof. *Id.* (citing *People v. Cadwallader*, 181 Ill. App. 3d 488, 501 (1989)). Where conflicting instructions are given, one of which is a correct statement of the law and the other is an incorrect statement of the law, the error is not harmless and constitutes grave error. *People v. Haywood*, 82 Ill. 2d 540, 545 (1980); *Jenkins*, 69 Ill. 2d at 67.

¶ 29    While the defendant did not object to the jury instructions or raise the issue in a posttrial motion, we agree with the defendant that Rule 451(c) allows this court to review this issue. Our supreme court has held that "where there are two separate issues instructions, one proper and the other erroneous, each inconsistent with the other, our Rule 451(c) is applicable." *Jenkins*, 69 Ill. 2d at 66-67. In such a case, prejudice to the defendant is presumed because of the importance of the right involved, "*regardless* of the strength of the evidence." (Emphasis in original.) *People v. Blue*, 189 Ill. 2d 99, 138 (2000). Thus, we will review the merits of the defendant's contentions.

¶ 30    The State also argues that there was no error where the jury instructions were proper as the committee note to IPI Criminal No. 7.06 indicates that when first-degree murder is charged under both section 9-1(a)(1) or (a)(2) *and also 9-1(a)(3)*, IPI Criminal No. 7.02 should be used for the count arising under section 9-1(a)(3). Thus, the State argues, there was no error. The defendant in

11

this matter, however, was not charged with a violation of section 9-1(a)(3) of the Code (720 ILCS 5/9-1(a)(3) (West 2016)), which contemplates a charge of felony murder. As such, the committee comment is inapposite. Further, the State argues that this court was provided with an incomplete record where discussion was held off the record regarding the giving of defendant's modified IPI Criminal No. 7.06. The error complained about, however, is with the giving of IPI Criminal No. 7.02 in conjunction with IPI Criminal No 7.06, and the record before this court is sufficient to review the issue.

¶ 31    The merits of the defendant's argument for a new trial based on an error in jury instructions must be considered within the applicable law relating to first-degree and second-degree murder. To sustain the defendant's conviction for first-degree murder, the State was required to prove that the defendant killed Carlos Johnson by performing acts that were intended to kill, do great bodily harm, or create the strong possibility of death or great bodily harm, and, where the defendant was claiming self-defense, that the defendant committed those acts without lawful justification. 720 ILCS 5/9-1(a)(1)-(2) (West 2016).

¶ 32    The defendant raised the affirmative defense of self-defense. Section 7-1 of the Code provides in relevant part: "A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force." *Id.* § 7-1(a). A person is justified in the use of force which is intended or likely to cause death or great bodily harm, however, only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony. *Id.* In order for the trier of fact to consider self-defense, the defendant must establish some evidence of each of the following elements: (1) unlawful force is threatened against a person; (2) the person threatened is not the aggressor; (3) the danger of harm was imminent; (4) the use of force was necessary; (5) the person

12

threatened actually and subjectively believed a danger existed which required the use of the force applied; and, (6) the beliefs of the person threatened were objectively reasonable. *People v. Gray*, 2017 IL 120958, ¶ 50. Once an affirmative defense is raised, the State has the burden of proving the defendant guilty beyond a reasonable doubt as to that issue together with all the other elements of the offense. *People v. Jeffries*, 164 Ill. 2d 104, 127 (1995).

¶ 33    If the State negates any element of self-defense, the self-defense claim fails. *Gray*, 2017 IL 120958, ¶ 50. The trier of fact may then consider whether the defendant is guilty of second-degree murder, *i.e.*, whether a mitigating circumstance existed. *People v. Spiller*, 2016 IL App (1st) 133389, ¶¶ 29-30. A defendant commits second-degree murder when he commits first-degree murder and, at the time of the killing, one of the enumerated mitigating factors is present. 720 ILCS 5/9-2(a) (West 2016). Although the burden of proof remains with the State to prove beyond a reasonable doubt each element of first-degree murder and the absence of mitigating circumstances, it is the defendant's burden to prove a mitigating factor by a preponderance of the evidence. *Id.* § 9-2(c); *People v. Kelly*, 2023 IL App (1st) 211470-U, ¶ 77.

¶ 34    In this case, the defendant asserted that the mitigating factor, sometimes referred to as "imperfect self-defense," applied. The mitigating factor of imperfect self-defense applies where, at the time of the murder, the defendant *unreasonably* believes that circumstances exist which justify the use of deadly force, *i.e.*, that sudden force is necessary to prevent imminent fear of great bodily harm to himself or another. 720 ILCS 5/9-2(a) (West 2016); *Jeffries*, 164 Ill. 2d at 113. When a defendant is found guilty of second-degree murder, the trier of fact has, in essence, concluded that the evidence that the defendant has offered was not sufficient to support his claim of self-defense, but there exists a mitigating factor (*i.e.*, the objectively unreasonable belief that he was acting in self-defense) sufficient to reduce the offense of first-degree murder to second-degree murder. *Jeffries*, 164 Ill. 2d at 129.

¶ 35    Turning now to the jury instructions given in the present case, we first note that the purpose of jury instructions is to provide the jurors with the correct legal principles that apply to the evidence, so that they may reach a correct verdict. *People v. Lovejoy*, 235 Ill. 2d 97, 150 (2009). When examining instructions in a case, no single instruction is to be viewed in isolation; rather, it must be viewed in the context of the entire charge. *People v. Housby*, 84 Ill. 2d 415, 433-34 (1981).

¶ 36    The trial court read aloud IPI Criminal No. 7.02 to the jury prior to their deliberations. Despite the defendant's self-defense argument, the instruction did not include the phrase "without lawful justification" in the trial court's reading or its written form and did not include the issues to be considered for a finding of second-degree murder. The second issues instruction, which is properly given where first-degree and second-degree murder are both at issue, was IPI Criminal No. 7.06. IPI Criminal No. 7.06 correctly stated the law and incorporated the necessary justification language along with the necessary findings for second-degree murder.

¶ 37    A similar jury instructions issue was addressed in *People v. Jenkins*, 69 Ill. 2d 61 (1977), where the central issue at the defendant's trial for attempted murder was whether the level of force that the defendant used was justified. The trial court gave the jury two attempted murder issues instructions: one omitted any reference to the fact that the defendant must not have been justified in using the force he employed; and a second instruction, which correctly stated the law and included the necessary three elements, including that the defendant's use of force must not have been justified. *Id.* at 66.

¶ 38    The court in *Jenkins* noted that the court has the duty to inform the jury as to the law, but where the instructions are contradictory, the jury cannot perform its constitutional function. *Id.* "It is well established that the giving of contradictory instructions on an essential element in the case is prejudicial error and is not cured by the fact that another instruction is correct." *Id.* The court acknowledged that, in some circumstances, an inaccurate instruction may be cured by other

14

instructions to the jury, however, "when the instructions are in direct conflict with one another, one stating the law correctly and another erroneously," that is not so. *Id.* Contradictory instructions put the jury in the position of having to select the proper instruction, a function exclusively the province of the trial court. *Id.*

¶ 39    Similarly, in *People v. Ayers*, 331 Ill. App. 3d 742 (2002), the defendant was charged with murder and claimed that he acted in self-defense. *Id.* at 750. The jury instructions defining first-degree and second-degree murder included a definitional instruction, IPI Criminal 3d No. 7.01A, which lacked the "without lawful justification" language. *Id.* at 753. Further, one issues instruction, IPI Criminal 3d No. 7.02 (Supp. 1996), omitted that the State must prove the defendant was not justified in using the force employed, while another instruction, IPI Criminal 3d No. 7.06A, was also given which correctly stated the law. *Ayers*, 331 Ill. App. 3d at 751-52. The *Ayers* court reasoned that the giving of both issues instructions forced the jury to "choose between two contradictory instructions which related to a central issue in the case, self-defense." *Id.* at 750. Thus, the jury was presented with two self-contained, inherently contradictory and inconsistent issues instructions defining the elements requisite for a finding of guilty. *Id.* at 751. As a result, the court concluded that the failure to give the correct definitional instruction, coupled with the giving of contradictory and inconsistent issues instructions on first-degree and second-degree murder, deprived the defendant of a fair trial. *Id.* at 753.

¶ 40    A vital part of a trial is the trial court's reading of instructions to the jury at the close of arguments. *People v. James*, 255 Ill. App. 3d 516, 526 (1993). Our supreme court has held that a jury instruction error is plain error where it "creates a serious risk that the jurors incorrectly convicted the defendant because they did not understand the applicable law, so as to severely threaten the fairness of the trial." *Hopp*, 209 Ill. 2d at 8. A defendant, however, need not prove the error in the instruction misled the jury. See *People v. Herron*, 215 Ill. 2d 167, 193 (2005). While

15

jury instructions should be considered as a whole and not in isolation, this proposition rests on the assumption that the jury instructions clearly and properly inform the jurors of the law. *People v. Alvine*, 173 Ill. 2d 273, 290 (1996). Inconsistent instructions inhibit the jury's ability to perform its function because the jury has not been adequately apprised of the law to be applied. *Id.* When jurors are forced to choose between conflicting elements within the instructions, the instructions as a whole cannot be considered curative of the confusion. *Id.*

¶ 41    Our supreme court recently reiterated in *People v. Hartfield*, 2022 IL 126729, that when the jury instructions are contradictory, the jury cannot perform its constitutional function. *Id.* ¶ 58. The supreme court again emphasized that where two directly conflicting instructions are given on an essential element, one stating the law correctly and the other erroneously, there is an inability to determine which instruction the jury was following. *Id.* The supreme court emphasized that where the integrity of the judicial system itself is at issue, regardless of plain error or harmless error analysis, such an error is presumed to be prejudicial. *Id.*

¶ 42    The error here is exactly such an instance. The trial court gave two conflicting issues instructions to the jury. The purpose of the instructions was to inform the jury as to how it may find the defendant guilty of first-degree murder and second-degree murder. Here, however, one self-contained instruction correctly stated the law, and another omitted an essential element, that the defendant acted "without lawful justification." We note that, "for an accused to be convicted of a criminal offense, the jury must find that each element of the offense has been proven beyond a reasonable doubt." *James*, 255 Ill. App. 3d at 528. As guardians of constitutional rights and the integrity of the criminal justice system, we must order a new trial when we conclude that the defendant did not receive a fair trial. Where we cannot determine which issues instruction the jury was following when it convicted the defendant of first-degree murder, we must reverse his

conviction and remand for a new trial. Thus, we need not address the defendant's other contentions of error on appeal.

¶ 43    After thoroughly reviewing the evidence, we are convinced that the evidence was sufficient to support a finding that the defendant is guilty beyond a reasonable doubt. Under these circumstances, a retrial of defendant would not violate double jeopardy principles. *People v. Stafford*, 325 Ill. App. 3d 1069, 1075 (2001).

¶ 44                                    III. CONCLUSION

¶ 45    For the foregoing reasons, we reverse the defendant's conviction for first-degree murder and remand for a new trial.

¶ 46    Reversed and remanded.