THIRD DIVISION

December 27, 2000

No. 1-99-2797

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County.

)

v. ) )

Guadalupe Rios, ) Honorable

) Kenneth J. Wajdas,

Defendant-Appellant. ) Judge Presiding.

JUSTICE WOLFSON delivered the opinion of the court:

     On April 12, 1998, outside a bar on the south side of Chicago, Guadalupe Rios (Rios) shot and killed Pablo Fernandez (Fernandez).  Rios was charged with first degree murder.  A jury found him guilty and he was sentenced to thirty years.

     At trial, Rios did not deny firing the fatal shot.  He contended he fired in self-defense.  The trial judge agreed to instruct the jury on the law of self-defense, but he gave a first degree murder definition instruction that did not include the words "without lawful justification."

     The defendant claims the omission of those three words from an otherwise correct set of instructions deprived him of a fair trial.  We do not agree.  We find no fatal error in the instructions or in the other issues raised by the defendant.  We affirm his conviction and sentence.

FACTS

     Both the victim and defendant were drinking in a bar on the south side of Chicago just before the shooting.  
Laticia Martinez (Martinez) testified she was an employee of the bar and was working the night Fernandez was killed.  Martinez said Fernandez was a regular customer at the bar.  Martinez saw defendant argue with Fernandez before the shooting, and testified defendant threatened to "fuck up" Fernandez during that argument.  Defendant left soon after the argument ended.  Fernandez left a few minutes later.  

     After Fernandez left the bar, Martinez heard three or four gun shots.  When she went outside, she saw Fernandez lying on the ground.  Martinez identified defendant from a police lineup several days after the shooting as the man she saw arguing with the victim.  She identified him again at trial.

     Rosendo Garcia (Garcia) testified he and defendant worked for the same company prior to defendant's arrest.  On April 17, 1998, Garcia was at work when he received a phone call from defendant.  Defendant told him he was not coming to work because two of his brothers had been arrested.  When Garcia asked defendant why they were arrested, defendant told him he shot two people. 

     Brian Mitchell (Mitchell), a forensic pathologist, testified he performed the autopsy on the victim.  He said Fernandez died from two gunshot wounds, to the left abdomen and the left hip.  Mitchell said the shots were not fired at close range.  

     Chicago police detective Thomas Cepeda (Cepeda) testified he and his partner were assigned to investigate Fernandez's death.  They approached defendant on April 17, 1998.  Defendant and his stepson were getting out of defendant's car in the alley behind their apartment.  Cepeda told defendant he was a policeman and asked defendant his name.  Defendant told him his name was "Manuel."  Cepeda told him he knew him to be Guadalupe Rios, and defendant admitted that was his name.  Cepeda asked defendant why he lied about his name and defendant said "he knew he was in trouble because he *** shot somebody the weekend before."  

     After Cepeda and his partner arrested defendant, Cepeda asked him why he shot Fernandez.  Defendant told him Fernandez "had aggravated him."  Cepeda asked him where the gun was hidden, and defendant told him he had thrown it away.  Cepeda told defendant he knew he hadn't thrown away the gun, and defendant said the gun was in the house.  He told Cepeda his wife could show the detectives where the gun was hidden.  Cepeda's partner rode to the station with defendant while Cepeda went inside and spoke to defendant's wife.  She showed him defendant's gun, which was hidden under the mattress of their bed.  

     Cepeda returned to the police station where he questioned defendant about the shooting.  Defendant told him that after drinking all afternoon, he and his nephew went to the bar where Fernandez was shot.  His nephew fell asleep at the bar, and defendant took him home.  He then returned to the bar and ordered another beer.  Defendant told Cepeda he must have bumped into someone while he was walking toward the pool table because "all of a sudden a guy started arguing with him."  Defendant said he left the bar after arguing with the man for a few minutes.  Defendant identified Fernandez from a photo as the man he argued with. 

     Defendant told Cepeda that Fernandez and another man followed him outside and started arguing with him again.  Defendant told Cepeda they were standing about three feet from each other while they were arguing.  As they were arguing, defendant saw another man come out of the tavern.  Defendant said this man was carrying a knife.  After the man with the knife walked outside and saw them arguing, he walked back inside the bar.  Though Fernandez and the other man did not have weapons, defendant pulled out his gun and shot Fernandez three times.  Defendant then got into his car and went home.

     During cross-examination, Cepeda remembered defendant said that while he was arguing with Fernandez inside the bar, defendant told the victim, "If you don't shut up, I'm going to fuck you up."  Cepeda also said defendant told him he shot Fernandez because he was afraid the man with the knife might come back out of the bar.

     Curt Marcucci (Marcucci) testified as a witness for the defendant.  He said he was standing at the bus stop across the street from the bar when the shooting occurred.  Marcucci testified while he was waiting at the bus stop, he saw defendant park his car on the sidewalk in front of the bar.  Defendant got out of the car alone and went into the bar.  Approximately five minutes later, Marcucci saw defendant get back into his car and drive away.  According to Marcucci, nobody was with defendant when he left.  

     Later, Marcucci saw defendant in front of the bar again.  Three men were standing in front of defendant, close to the door of the bar.  They stood about three feet from defendant.  They were talking to defendant, but Marcucci could not hear the conversation.  Marcucci saw defendant pull a gun out, aim it at the victim's groin, and fire three times.  Marcucci ran to a gas station and called the police.

     Defendant testified he shot Fernandez in self-defense.  Defendant said Fernandez "came at" him after he accidentally brushed against him.  He claimed Fernandez hit him in the chest and knocked him down while they were arguing.  Defendant said he left the bar after the confrontation, but Fernandez and two other men followed him outside.  Defendant testified once the men were outside the bar, they threatened to kill him.  

     According to defendant, one of the men was carrying a knife, though Fernandez was unarmed.  When defendant saw the knife, he pulled out his gun and fired three times.  Defendant said he did not intend to kill anyone when he fired the gun, and fired only because he was afraid. 

     After hearing the evidence, the jury found defendant guilty of first degree murder.  Defendant filed a motion for a new trial, which the trial court denied.  Defendant was sentenced to 30 years in prison.  Though defendant failed to file a post-sentencing motion in the trial court, he now appeals both his conviction and sentence.

DECISION

Jury Instructions

     The jury instructions given by the trial court included Illinois Pattern Jury Instruction (IPI), Criminal, No. 7.01A(3d Ed. 1995)(IPI 7.01A), an instruction which defines first degree murder, as well as IPI, Criminal 3d No. 7.06A, which is a first and second degree murder issues instruction.  The jury also was given IPI Criminal 3d No. 7.05A, an instruction which defines a mitigating factor for purposes of second degree murder, and IPI Criminal 3d No. 24-25.06, a self-defense instruction.  

     The definitional instruction for first degree murder did not include the phrase "without legal justification," despite defendant's self-defense argument.  It simply read:

    "A person commits the offense of first degree murder when he kills an individual if, in performing the acts which cause the death,

he intends to kill or do great bodily harm to that individual; or

he knows that such acts will cause death to that individual; or

he knows that such acts create a strong probability of death or great bodily harm to that individual."  Illinois Pattern Jury Instruction, Criminal, No. 7.01A (3d Ed. 1992).

According to the IPI commentary for this instruction, if the jury is given a self-defense instruction, the words "without legal justification" should be inserted so that the instruction says:

     "A person commits the offense of first degree murder when he kills an individual 
without lawful justification
 if, in performing the acts which cause the death,

     he intends to kill or do great bodily harm to that individual; or

     he knows that such acts will cause death to that individual; or

     he knows that such acts create a strong probability of death or great bodily harm to that individual." (Emphasis added).  IPI Criminal 3d No. 7.01A.

     The issues instruction included the appropriate self-defense language.  It said, in part:

     "To sustain either the charge of first degree murder or the charge of second degree murder, the State must prove the following propositions:

     
First
:    That the defendant performed the acts which caused the death of Pablo Fernandez; and

Second
: That when the defendant did so,

he intended to kill or do great bodily harm to Pablo Fernandez; or

he knew that such acts would cause death to Pablo Fernandez; or

He knew that such acts created a strong probability of death or great bodily harm to Pablo Fernandez;

and 

     
Third
:    
That the defendant was not justified in using the force which he used.

***

     The defendant has the burden of proving by a preponderance of the evidence that a mitigating factor is present so that he is guilty of the lesser offense of second degree murder instead of first degree murder.  By this I mean that you must be persuaded, considering all the evidence in this case, that it is probably more true than not true that the following mitigating factor is present: That the defendant, at the time he performed the acts which caused the death of Pablo Fernandez, believed the circumstances to be such that they justified the deadly force he used, but his belief that such circumstances existed was unreasonable." (Emphasis added).  IPI Criminal 3d No. 7.06A.

     The jury also was given a self-defense instruction and an instruction defining a mitigating factor for purposes of second-degree murder.  The self-defense instruction:

     "A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend himself against the imminent use of unlawful force.

     However, a person is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself."  IPI Criminal 3d No. 24-25.06.

The instruction defining a "mitigating factor" said:

     "A mitigating factor exists so as to reduce the offense of first degree murder to the lesser offense of second degree murder if at the time of the killing the defendant believes that circumstances exist which would justify the deadly force he uses, but his belief that such circumstances exist is unreasonable."  IPI Criminal 3d No. 7.05A.

     Defendant claims the failure to include the "without lawful justification" language in the first-degree murder definitional instruction constitutes reversible error.  The State contends defendant waived this issue by failing to raise it at trial.  Defendant concedes the issue was not raised at trial, but says the failure to include the language constitutes a substantial defect under Supreme Court Rule 451(c).  134 Ill. 2d R. 451(c).

     Rule 451(c) says, in part:

     "Except as otherwise provided in these rules, instructions in criminal cases shall be tendered, settled, and given in accordance with section 2-1107 of the Code of Civil Procedure, but substantial defects are not waived by failure to make timely objections thereto if the interests of justice require."  134 Ill. 2d R. 451(c).

This rule has been interpreted as a plain-error exception to the waiver rule.  
People v. Huckstead
, 91 Ill. 2d 536, 544, 440 N.E.2d 1248 (1982).  

     The plain error rule allows a reviewing court to consider issues that were not properly raised before the trial court if: (1) the evidence is closely balanced; or (2) the error is so fundamental and of such magnitude that the defendant was denied a fair trial."  
People v. Lucas
, 151 Ill. 2d 461, 482, 603 N.E.2d 460 (1992). 

     A review of the record does not show the evidence was closely balanced.  Defendant claims he shot Fernandez because he was afraid Fernandez was going to kill him.  The evidence showed the defendant was involved in a physical altercation with Fernandez inside the bar.  Laticia Martinez remembered hearing defendant threaten Fernandez during the argument, a threat defendant admitted making when Detective Cepeda interviewed him after his arrest.  

     When defendant left the bar, Fernandez followed him outside.  While defendant claims that one of the men who accompanied the victim threatened him with a knife, he does not claim that man attacked him.  Detective Cepeda testified defendant told him the man with the knife went back inside the bar before defendant shot Fernandez.  It is undisputed Fernandez was unarmed and was standing several feet from defendant when the defendant fired the gun.

     Though defendant claims Curt Marcucci's testimony supports his self-defense theory, Marcucci simply testified he saw defendant talking to the victim and two other men just before he pulled out a gun and started firing.  Marcucci never indicated the men appeared to be attacking or threatening defendant, and he said the men were standing about three feet from defendant when he started firing.  None of the evidence, not even defendant's testimony, supports his self-defense theory.

     Defendant's discussion of plain error focuses on his contention that the trial court's omission of the appropriate language from the definitional instruction denied him a fair trial.  He compares the error in this case to the one committed by the trial court in 
People v. Jenkins
, 69 Ill. 2d 61, 63, 370 N.E.2d 532 (1977), where the Illinois Supreme Court held defendant was denied a fair trial because the jury was given contradictory issues instructions.  

     In 
Jenkins
, the attempt murder issues instruction submitted by the prosecution did not include language indicating the jury had to find defendant was not justified in using the force he used.  Defendant objected to this instruction, and submitted one which directed the jury to find against him only if he was not justified in his use of force.  The court gave both instructions to the jury.

     The supreme court found the two instructions contradictory, and said:

     "[W]here the instructions are contradictory, the jury cannot perform its constitutional function.  This inability is the fault of the court, whose duty it is to give the jury proper guidance, not to generate confusion, as was the case here *** While it is true that an instruction may be inaccurate, and other instructions may remove this error, such cannot be so when the instructions are in direct conflict with one another, one stating the law correctly and the other erroneously *** Where the instructions are contradictory, the jury is put in the position of having to select the proper instruction a function exclusively that of the court *** [W]e are of the opinion that where there are two separate issues instructions, one proper and the other erroneous, each inconsistent with the other, our Rule 451(c) is applicable."  
Jenkins
, 69 Ill. 2d at 66-7.

     Here, the jury was not forced to choose between two inconsistent issues instructions.  Nor did the instruction defining first degree murder contradict the issues instruction.  Though the "without lawful justification" language was erroneously omitted from the definitional instruction, the issues instruction told the jury it could not find defendant guilty of that offense unless the State proved he was not justified in using the force he used.  Rather than contradict the definition of first degree murder given to the jury, the issues instruction and the self-defense instruction complemented it.  There was no conflict.   

     In each of the remaining cases cited by defendant, the jury instructions either were contradictory, as in 
Jenkins
, or completely lacked an essential element of the crime charged.  See 
People v. Ogunsola
, 87 Ill. 2d 216, 222-23, 429 N.E.2d 861 (1981)(element of intent to defraud completely omitted from jury instruction defining deceptive practices); 
People v. Marsico
, 100 Ill. App. 3d 691, 693, 427 N.E.2d 351 (1981)(in obscenity trial, definitions instruction and issues instruction were contradictory); 
People v. Dordies
, 60 Ill. App. 3d 621, 625-26, 377 N.E.2d 245 (1978)(jury not instructed on defendant's theory that intervening factors caused victim's death).  In this case, the issues instruction properly advised the jury as to the elements of first and second degree murder, and did not contradict any of the other instructions.  The jury was instructed that in order to find defendant guilty of first degree murder, it would have to find beyond a reasonable doubt he was not justified in using the force he used. 

    
 
People v. Huckstead
 and 
People v. Casillas
, No. 83911 (November 16, 2000), are on point.
 
 In 
Huckstead
, the defendant contended he killed the victim in self-defense.  The jury was given a self-defense instruction, but the issues instruction failed to say the State was required to prove beyond a reasonable doubt defendant was not justified in his use of force.  Defendant did not object at trial, and did not raise the issue in his post-trial motion.  On appeal, he claimed the error constituted a "substantial defect" under Rule 451(c).  

     The Illinois Supreme Court disagreed, finding the trial court's failure to properly instruct the jury did not deprive defendant of a fair trial.  The  court said:

     "In the instant case, the instructions informed the jury that the defendant was justified in using deadly force if he reasonably believed that force was necessary to prevent imminent death or great bodily harm *** Further, the record reveals that, in closing argument, defense counsel repeatedly and specifically emphasized that the State had the burden of proving defendant was not justified in the force he used.  Additionally, the record discloses that the State, in rebuttal argument, also acknowledged the burden ***.

     We believe in this case, the instructions, in combination with the closing arguments by counsel for both sides, apprised the jury that the State had the burden of proving that defendant was not justified in the force he used.  Consequently, the failure of the trial court to give [the appropriate instruction] did not constitute 'grave error'."  
Huckstead
, 91 Ill. 2d at 544-45.

     The same analysis was employed recently in 
Casillas
,
 where the defendant claimed his right to a fair trial was violated when the trial court failed to give an instruction on the State's burden of proof (IPI Criminal 3d No. 2.03) or an instruction informing the jury the indictment was not to be used as evidence (IPI Criminal 3d No. 2.02).  
Casillas
, slip op. at 7.  The supreme court looked to the "totality of the circumstances," including "all the instructions to the jury, the arguments of counsel, whether the weight of the evidence was overwhelming and any other relevant factors" to determine whether the failure to give the instructions denied the defendant a fair trial.  
Casillas
, slip op. at 8.  The court 
found the trial court's repeated references to the burden of proof and presumption of innocence, combined with the properly given jury instructions and accurate final arguments of the lawyers, were adequate to inform the jury of the State's burden.  
Casillas
, slip op. at 12-13.  

     Here, during closing argument, the prosecutor discussed the definitional instruction for murder and included the "without legal justification" language:

     "The Judge is going to instruct you and he's going to tell you that a person commits the offense of first degree murder when he kills an individual without lawful justification ***."

The issue of justification was repeatedly referred to during both the prosecutor's and the defendant's closing arguments.  The prosecutor said:

     "[T]he Judge is going to instruct you on this issue about justification.  Justification.  The Judge is going to read to you and tell you that a person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend himself against the imminent use of *** unlawful force.  However, a person is justified in the use of force which is intended or likely to cause *** great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself."

During his closing argument, the defense attorney said:

     "[O]ne of the instructions the Judge is going to give you is the law on justifiable use of force.  That's the question you must debate *** was his use of force justified under the circumstances."

     Given the extensive discussion of the justification issue during both parties' closing arguments and the use of the appropriate language in the issues and self-defense instructions, we believe the jury was adequately instructed.  After reviewing the "totality of the circumstances," we find defendant was not deprived of a fair trial by the trial court's failure to include "without lawful justification" language in the murder definition instruction.  The issue concerning the missing language was forfeited by defense counsel's failure to object.  Even if we were to consider the unfortunate omission, we would not find reversible error.

Prosecutor's Allegedly Improper Closing Comments

     
Defendant first claims the prosecution's characterization of a second-degree murder verdict as "a gift" was an improper attempt to infer second-degree murder was not a serious crime and that it carried a light sentence.  
During rebuttal, the prosecutor said:

"So what he's hoping for, what he's hoping for is that you'll bite on number 3 *** and give him the second degree.  Give him his gift."

     The prosecution generally has wide latitude in fashioning its closing argument, and reversal is unwarranted unless the prosecution's comments substantially prejudice defendant.  
People v. Thomas
, 266 Ill. App. 3d 914, 922, 641 N.E.2d 867 (1994).  A defendant is substantially prejudiced by a comment if it is impossible to say whether or not it resulted in the verdict of guilt.  
People v. Henderson
, 142 Ill. 2d 258, 323, 568 N.E.2d 1234 (1990).

     Defendant relies on 
People v. Howard
, 232 Ill. App. 3d 386, 597 N.E.2d 703 (1992)("involuntary manslaughter does not apply; it is a cop-out *** it is a cop-out in this case"),
 and 
People v. Crossno
, 93 Ill. App. 3d 808, 417 N.E.2d 827 (1981)("If you want to slap him on the wrist find him guilty of involuntary manslaughter")
.  In each case, the appellate court's ruling was premised on its finding that the evidence was so closely balanced that the prosecutor's comment could have affected the outcome of the trial. 
 
Howard
, 232 Ill. App. 3d at 390; 
Crossno
, 93 Ill. App. 3d at 823
.  That is not the case here.  

     In 
People v. Washington
, 257 Ill. App. 3d 26, 40, 628 N.E.2d 351 (1993), the appellate court dealt with a similar statement.  
There, the prosecutor said:

"You have to consider whether mitigating factors had been proved so that the defendant is guilty of lessor [sic] offense of second degree murder instead of first degree murder.  And that's what he is counting on.  If he gets that he wins."  
Washington
, 257 Ill. App. 3d at 38.

The court found these comments were permissible argument based on the facts in evidence. 
Washington
, 257 Ill. App. 3d at 40.  

     
We have examined the prosecutor's comments in this case in light of the entire record.  Though the remarks are better left unsaid and would endanger a conviction in a closer case, we do not find "they engender substantial prejudice against a defendant such that it is impossible to say whether or not a verdict of guilt resulted from these comments." 
 
People v. Nieves
, No. 83670, slip op. at 13 (November 16, 2000); 
People v. Henderson
, 142 Ill. 2d 258, 323, 568 N.E.2d 1234 (1990)
.  Because we do not make that finding we conclude the remarks, while improper, do not constitute reversible error.

     Defendant next claims the prosecutor misstated the law when he said:

     "Now, defendants are presumed innocent when they walk in the door before the trial starts.  But when they hit the stand, they're not presumed to tell the truth."

     The State claims defendant waived this issue when he failed to object to this comment at trial and failed to raise it in his posttrial motion.  
Since the evidence in this case is not closely balanced, the prosecutor's comment will constitute plain error only if it was so prejudicial it denied defendant a fair trial.  
Hayes
, 173 Ill. App. 3d at 1049. 

     Defendant contends the prosecutor's comment denied him a fair trial because it shifted the burden from the State and placed it on the defendant.  We do not agree.  

     In 
People v. Porter
, 96 Ill. App. 3d 976, 422 N.E.2d 213 (1979) and 
People v. Matthews
, 69 Ill. App. 3d 65, 387 N.E.2d 10 (1979), the appellate court analyzed similar comments
.  In 
Porter
, the prosecutor said:

"He chose to put on an entire defense, and ladies and gentlemen of the jury, I believe that you will be receiving an instruction that says *** the defense doesn't have to prove his innocence, but the defendant's testimony has to be judged in the same way as any other witness."  

This comment was held not to have denied the defendant a fair trial because it did not misstate the law and could not "be construed as either a statement or implication that the defendant had the burden of introducing evidence to create a reasonable doubt of guilt."  
Porter
, 96 Ill. App. 3d at 986.

     In 
Matthews
, the prosecutor said: 

"[I]t is certainly true that the law says that you are to go through the trial with the presumption of innocence, and you should retain that attitude up through that point.  But once you walk into that Jury room you no longer have that responsibility."  
Matthews
, 69 Ill. App. 3d at 66.

Though it found the comment to be a misstatement of law, the appellate court held it did not "constitute a material factor in defendant's conviction or result in substantial prejudice to him."  
Matthews
, 69 Ill. App. 3d at 67.

     Here, 
the comment contained two correct statements of the law.  They should not have been in the same sentence, since the jurors could have been mislead.  Though the comment may have implied the jury was not required to presume defendant innocent after the trial began, the jury was properly instructed on the presumption of innocence.  The implication defendant complains of is not so significant in this case that it can be said to have affected defendant's right to a fair trial.  
Porter
, 96 Ill. App. 3d at 956.

     Defendant last contends the prosecutor misstated the law, misled the jury, and suggested his lawyer fabricated a defense theory when he
 said:

"[I]f you remember at the very end [defense counsel] starts tlaking [sic] about second degree.  Oh, yeah there is second degree too.  The reason he's talking about second degree, ladies and gentlemen, is he knows that there was no reasonable belief that he had to pull out that gun and shoot that victim.  He knows that.  So he knows that you can't get around that reasonable belief.  Because if you believe that he had reasonable belief, you would have to find him not guilty, period.  He knows you're not going to do that because he knows the evidence doesn't show that.
"

     Defendant failed to object to these comments at trial and did not include them in his posttrial motion.  Though defendant contends the comments constitute plain error because they attacked defense counsel's integrity, the cases cited by defendant involve far more egregious comments than those made in this case.  See
 
People v. Emerson
, 97 Ill. 2d 487, 455 N.E.2d 41 (1983); 
People v. Starks
, 116 Ill. App. 3d 384, 451 N.E.2d 1298 (1983)
.  

     In 
Emerson
, the supreme court found the assistant State's Attorney's statements that the defense had to "make something up," that all defense attorneys try to "dirty up the victim" to distract the jury, and that defense counsel's argument was a "smokescreen" were prejudicial.  
Emerson
, 97 Ill. 2d at 498.

     In 
Starks
, the prosecutor repeatedly referred to defendant as a liar, said he was engaged in a "ridiculous fabrication," and referred to defense counsel's closing argument as "forty-five minutes *** of the most ridiculous double talk that I have ever heard in my life."  
Starks
, 116 Ill. App. 3d at 394.  The court found these remarks resulted in prejudice to defendant because they disparaged defense counsel's integrity and implied that counsel fabricated a defense.  
Starks
, 116 Ill. App. 3d at 394.

     In this case, the prosecutor's remarks fall just short of suggesting defense counsel lied or fabricated a defense.  Though we agree it was inappropriate for the prosecutor to speculate as to defense counsel's opinion of the self-defense theory, the comment does not constitute plain error in this case.  
Washington
, 257 Ill. App. 3d at 40 (prosecutor's comments
 "that's what he's counting on" and "[t]hat's what he wants, a second degree murder" not improper).

Excessive Sentence

     Defendant asserts the trial court's sentence of 30 years in prison was excessive.  He claims the trial court failed to consider his rehabilitative potential and several mitigating factors including absence of prior convictions, his age, employment, and support of a young child.

     The State contends defendant's failure to file a posttrial motion to reduce sentence precludes him from raising this issue on appeal.  See 
People v. Reed
, 177 Ill. 2d 389, 395, 686 N.E.2d 584 (1997). Defendant responds by claiming the trial court did not admonish him that such a motion must be filed within 30-days of sentencing.  We find this claim to be mistaken since the record shows defendant was properly admonished according to Supreme Court Rule 605.  145 Ill. 2d R. 605; see also 
People v. Corrie
, 294 Ill. App. 3d 496, 508, 690 N.E.2d 128 (1998).  The issue was forfeited.

     Even if defendant had filed the appropriate post-sentencing motion, we would find defendant's sentence is not excessive.

     
A reviewing court will not alter the judgment of the sentencing court absent a showing that the punishment imposed constitutes an abuse of discretion.  
People v. Beals
, 162 Ill. 2d 497, 512, 643 N.E.2d 789 (1994).  
The sentencing range for first degree murder is from 20 to 60 years in prison.  730 ILCS 5/5-8-1(a)(1)(West 1998).    

     A review of the record shows the trial court considered all of the mitigating factors presented by defendant before reaching its conclusion.  It specifically referred to defendant's lack of prior convictions, as well as its finding that defendant did not intend to kill the victim, as factors in mitigation.  The trial court reviewed both the pre-sentence investigation report and a victim impact statement prepared by the victim's daughter.  The court considered defendant's conduct and the impact on the victim's family in aggravation.  The sentence is well within the statutory range for first degree murder, and nothing in the record indicates it represents an abuse of discretion.

Death of Victim as Improper Factor in Sentencing

     Defendant claims the trial court improperly considered the defendant's death as an aggravating factor during sentencing.           In discussing defendant's sentence, the trial court said:

     "Basically *** the aggravation results from *** the defendant's conduct that evening and the tragic impact on the family of the victim, not to mention the tragic impact on the victim himself."

     Defendant cites 
People v. Saldivar
, 113 Ill. 2d 256, 497 N.E.2d 1138 (1986), as support for his theory.  In 
Saldivar
, the defendant was convicted of voluntary manslaughter.  When the trial court sentenced the defendant it focused primarily on the death of the victim as an aggravating factor.  In fact
, the trial court specifically said it found the death of the victim to be the "number one factor in aggravation." 113 Ill. 2d at 272.  

     In 
Beals
, 162 Ill. 2d at 509, defendant contended the trial court improperly considered the victim's death as an aggravating factor.  In that case, the trial court said:

"In aggravation the first guideline indicated in the statute is 'whether the conduct of the defendant caused or threatened serious harm.'  Well, we all know that your conduct caused the ultimate harm.  It caused the loss of a human life."  
Beals
, 162 Ill. 2d at 509.

The supreme court held this statement did not indicate the trial court considered the victim's death as an aggravating factor, but instead 
"was simply a general passing comment based upon the consequences of the defendant's actions."  
Beals
, 162 Ill. 2d at 509.  We believe the same is true of the remarks made by the trial court in this case.
  

Ineffective Assistance of Counsel

     Defendant alleges his trial counsel was ineffective due to his failure to object to the improper jury instruction and the inappropriate remarks made by the prosecutor during closing argument, and his failure to file a motion to reduce sentence.          Under 
Strickland v. Washington
, 466 U.S. 668, 687, 694, 80 L. Ed. 2d 674, 693, 698, 104 S. Ct. 2052, 2064, 2068 (1984), in order to succeed on an ineffective assistance of counsel claim, a defendant must allege facts demonstrating counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different.  Because we have found that none of the errors raised by defendant was prejudicial, we reject defendant's ineffective assistance argument.  
Strickland v. Washington
, 466 U.S. 668, 687, 80 L.Ed.2d 674, 693, 104 S.Ct. 2052, 2064 (1984)
; 
Casillas
, slip op. at 14
.  

CONCLUSION

     For reasons we have set out, we affirm the defendant's conviction and sentence.  Both parties agree that the mittimus should be corrected to reflect one charge of first degree murder rather than two.  We so order.

     Affirmed.  

CERDA, and BURKE, JJ., concur.