2021 IL App (1st) 182558-U

No. 1-18-2558

March 22, 2021

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 00012 |
| | ) | |
| LEEVERT ANDERSON, | ) | Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE WALKER delivered the judgment of the court.
Justices Pierce and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where evidence is not closely balanced, Rule 431(b) violation is not plain error. Despite incorrect definitional instruction for first-degree murder, the jury was apprised of the State's burden to prove defendant lacked justification for his use of force beyond a reasonable doubt.

¶ 2    Defendant Leevert Anderson was charged with the first-degree murder of Jerald Strong. Following a jury trial, Leevert was found guilty of second-degree murder and sentenced to 13 years in prison. Leevert appeals arguing the circuit court failed to ascertain whether the jurors understood

and accepted all four principles of Illinois Supreme Court Rule 431(b) (eff. July 1, 2012), and failed to include the "without lawful justification" element in the definitional instruction for first degree murder. For the following reasons, we affirm.

¶ 3                                  BACKGROUND

¶ 4      At trial, Dwayne Brumsfield, Jerald's half-brother, testified that on November 2, 2015, he, Gregory Dortch, and Jerald were driving around Chicago in Jerald's car. Dwayne parked the car on 15th and Sawyer Avenue, then Jerald and Gregory exited while he remained inside on his phone. Dwayne heard a commotion and when he opened his door, saw Jerald "hyped up" with his shirt ripped. Dwayne testified that he did not witness any part of the fight between Leevert and Jerald, but saw Gregory trying to separate them. Dwayne heard Gregory tell Leevert, "We ain't on that with you. We ain't trying to get into it with you." He also denied seeing Jerald, Gregory, or Leevert with a gun that day.

¶ 5      Dwayne provided conflicting testimony regarding the November 2, 2015 fight to the grand jury. Before the grand jury, Dwayne testified that Leevert approached Jerald and said, "what's up, do you want to fight me" before Jerald punched Leevert and the two fought. Dwayne also told the grand jury that Leevert dropped a gun during the fight. After the fight, Gregory retrieved the gun and returned it to Leevert. When Gregory returned the gun, he told Leevert, "we are not on that with you. Stop trying to fight us and get into it with us. We are trying to be cool with you."

¶ 6      On cross-examination, Dwayne admitted his grand jury testimony regarding the November 2, 2015 fight differed from his trial testimony because he told the grand jury the parts of the fight he did not witness as they were explained to him.

March 22, 2021

¶ 7    At trial, Dwayne testified that on November 3, 2015, he, Gregory, and Jerald were on 16th and Sawyer Avenue having a conversation on the sidewalk, after which they walked toward Jerald's parked car on 14th and Sawyer Avenue. While walking, they saw a group of guys including Leevert and Gregory's brother, Germall, standing near 15th and Sawyer Avenue. Germall asked Jerald, "why you always fighting. Y'all grew up together, y'all." Leevert walked away, leaving Gregory, Germall and Jerald talking. Leevert later came back to the group and exchanged words with Jerald. Germall grabbed Leevert in a bear hug, and told him, "no, no, no, y'all don't need to be fighting." Leevert responded, "Man, let me go." Jerald, now in the middle of the street, told Leevert "we can fight again" and raised his fists toward his chest. After Germall let Leevert go, Leevert shot Jerald in the side of the face. After Jerald fell to the ground, Leevert stood over him and shot him in the head. Leevert then ran into the alley. Dwayne denied having previously seen the gun Leevert used. He also testified that neither he, Jerald nor Gregory were armed that day, and no one went to 15th and Sawyer Avenue looking for a fight.

¶ 8    Dwayne's grand jury testimony regarding the November 3, 2015 shooting also differed from his trial testimony. Before the grand jury, Dwayne testified that the gun used on November 3 was the same gun that fell out of Leevert's pocket the night before. He also told the grand jury Leevert said "fuck it" before shooting Jerald and afterwards said, "I told y'all I ain't no bitch. Stop playing with me."

¶ 9    Gregory Dortch testified that he was a long-time friend of Jerald and considered him a brother. Gregory admitted he had prior altercations with Leevert but described their relationship as "cool" up until the shooting. On November 2, 2015, Gregory, Dwayne, and Jerald went to 15th and Sawyer Avenue to see a friend named Ali Mohammad. Jerald and Gregory exited the car to

speak with Ali. As they spoke, Leevert approached the group, and Jerald became hostile. Leevert responded, "damn what kind of animosity, you want to fight me or something." Jerald punched Leevert and the two began fighting. Ali grabbed Leevert and Gregory grabbed Jerald trying to stop the fight. However, Leevert grabbed Jerald's dreadlocks and would not let go. Gregory told them to stop fighting and Jerald put his hands up and said, "I out." Leevert said, "Y'all trying to jump on me" to which Gregory replied, "We ain't trying to jump on you. I'm just trying to break it up." After the fight, Gregory saw a black and brown .380 caliber gun. Gregory testified the gun came from Jerald, and he had seen Jerald with the gun earlier. He denied giving the gun to Leevert, and instead testified that he kept the gun in his pocket until he put it in Jerald's car. However, before the grand jury, Gregory testified that Leevert dropped the gun and he gave it back as a peace offering.

¶ 10    At trial, Gregory testified that on November 3, 2015, he, Jerald, and Dwayne were on 15th and Sawyer Avenue and no one was armed. Gregory heard Leevert tell Jerald, "Y'all bogus for jumping on me." Gregory, Jerald, and Dwayne then left to go to the store. When they returned, Germall was standing on 15th and Spaulding, the next block over, and called them to come over. As Germall, Jerald, and Gregory spoke with Germall about the November 2 fight, Leevert stood nearby and attempted to interject. Jerald told Leevert, "Ain't nobody talking to you.' You know. 'Cool.' 'Why are you even fucking talking.'" Leevert then removed a pistol from his pocket, prompting Germall to grab him. Leevert said, "On my grandfather I'm not on that." After Germall released him, Leevert walked toward Jerald and shot him. After Jerald fell to the ground, Leevert stood over him and fired two additional shots. After the shooting, Leevert told Gregory, "Just stay out of my business" and ran away.

¶ 11    Before the grand jury, Gregory testified that Leevert took the gun out and said, "I ain't no bitch." Gregory also said he recognized the gun Leevert used as the same gun he had returned to Leevert the night before. He told the grand jury that before Germall let Leevert go, Leevert said, "I'm cool. I ain't on anything. I swear I ain't going to do nothing."

¶ 12    On cross-examination, Gregory stated that Leevert wanted to be friends with Jerald, but Jerald did not want to be friends. Gregory claimed he lied to the grand jury about seeing Leevert drop a gun because he wanted to protect himself and Jerald. Gregory stated he was comfortable being honest at trial because he was no longer on parole and Leevert's life was at stake. He also stated that there was a gun in Jerald's car on November 3.

¶ 13    On re-direct examination, Gregory testified that the gun under Jerald's passenger seat remained in the car and the only person with a gun on November 3 was Leevert. He also stated that he never saw Jerald with a gun during any of the prior incidents with Leevert.

¶ 14    Leevert testified on his own behalf. He lived at 1535 S. Sawyer Avenue his entire life and knew Jerald from around the neighborhood. He testified about multiple violent incidents involving Jerald. First, Leevert alleged in 2012, while Jerald was incarcerated, he had an altercation with Jerald's cousin, David Strong. Leevert claimed David burned Leevert's car at Jerald's direction. When asked why Jerald would want to burn his car, Leevert speculated that Jerald was envious of the car.

¶ 15    Leevert next described a fight he witnessed between Demetrius Hill, Robert Howell, and Jerald in September 2013. Leevert was on his porch when the fight occurred next door on Demetrius' porch. During that fight, Demetrius stabbed Jerald and Robert in self-defense.

¶ 16    Next, Leevert testified that on New Year's in 2014, he received a phone call informing him that Robert and Jerald were in the front of his building and requesting he come down and talk. They discussed the name of Leevert's clothing line, Sawyer Free Boys Global. Robert and Jerald wanted to use the same initials for their clothing line, Slutty Family Bread Gang. Leevert agreed to change his clothing line, and renamed it TBG, Touched by Genuine. As the conversation ended, Leevert attempted to walk away when Jerald hit him.  Jerald told him, "we could fight to the death." After the attack, Leevert had black eyes and was missing his wallet. Jerald eventually returned the wallet, but $250 in cash was missing, and his debit card had been used.

¶ 17    Leevert described another incident in 2015 where Jerald shot a gun on the block of 15th and Sawyer Avenue. Leevert testified that he had previously seen Jerald with a gun approximately five times.

¶ 18    Leevert testified that on November 2, 2015, he saw a car speed down the street and park next-door to his house. Jerald, Gregory, and Dwayne exited the car, and Leevert spoke to Gregory. A verbal altercation ensued between Leevert and Jerald. Jerald pushed Leevert, then Leevert punched Jerald. Jerald slammed Leevert to the ground, and Gregory punched Leevert in the ribs. One of Leevert's friends tried to break up the fight but Jerald had Leevert pinned to the ground. Jerald tore his shirt off and said, "we can fight to the death." Following the fight, Leevert suffered skeletal bruising and lost a tooth. He was treated and released from the hospital but chose not to pursue charges.

¶ 19    Finally, Leevert testified about the events immediately preceding the shooting. On November 3, 2015, Leevert was walking his dog and carrying a gun for protection. He saw Germall and a group of guys standing at 15th and Spaulding. He told the group about the November 2 fight

and they began walking toward Sawyer Avenue. Eventually, this group saw Jerald, Gregory, and Dwayne walking toward 15th Street. Germall called Jerald, Gregory, and Dwayne over. Leevert stood on the other side of the alley as they approached and did not hear the conversation but speculated that Jerald told Germall his version of the fight. Germall then asked Leevert to join the conversation. When Leevert walked toward the group Jerald became "antsy" and told Leevert that they could "fight to the death right now if you want to." Germall stood between them to avoid another fight. Jerald backed into the street and allegedly threatened to kill Leevert. Leevert testified he believed Jerald was reaching in his pocket for a gun when he shot Jerald.

¶ 20    On cross-examination, Leevert admitted he never saw Jerald with a gun on November 3. Leevert further admitted that after he shot Jerald the first time, he shot him in the back of the head as he laid on the ground.

¶ 21    Demetrius Hill testified that in September 2013, he lived on 15th and Sawyer Avenue and was Leevert's next-door neighbor. On September 29, 2013, at approximately 1:45 am, Demetrius and a friend were drinking on his front porch when Jerald and his friends approached. The group came inside the building, but soon surrounded Demetrius making him feel uncomfortable. Jerald poked, then punched Demetrius, which caused Demetrius to pull out his knife to defend himself. Demetrius stabbed two individuals, including Jerald, then called the police. He believed charges were brought against Jerald but was not notified of the court date because he moved from Chicago two days after the incident. The case against Jerald was dismissed because Demetrius did not appear in court.

¶ 22    During closing argument, the State argued Leevert lacked justification for his use of force and was guilty of first-degree murder. Defense counsel argued Leevert was justified because he

believed Jerald had a gun and was about to shoot. After approximately four hours of deliberations, the jury found Leevert guilty of second-degree murder. Leevert filed a motion for new trial, which the circuit court denied. After a sentencing hearing, the circuit court sentenced Leevert to 13 years in the Illinois Department of Corrections. The circuit court denied a motion to reconsider the sentence.

¶ 23    This timely appeal followed.

¶ 24                                              ANALYSIS

¶ 25    On appeal, Leevert argues the circuit court failed to ascertain whether the jurors understood and accepted all four principles of Rule 431(b), commonly referred to as the four *Zehr* principles (see *People v. Zehr*, 103 Ill. 2d 472 (1984)). Specifically, Leevert contends the circuit court did not determine whether the jurors understood and accepted the fourth principle and mangled whether the jurors understood and accepted the third principle.

¶ 26    Criminal defendants have a constitutional right to trial by an impartial jury. *People v. Encalado*, 2018 IL 122059, ¶ 24. This constitutional guarantee includes the right to an adequate *voir dire* to identify unqualified jurors. *People v. Buss*, 187 Ill. 2d 144, 175-76 (1999).

¶ 27    Rule 431(b) imposes a duty upon the circuit court to ensure all potential jurors understand and will apply four fundamental principles of criminal law. Specifically, the rule requires the circuit court to ask each potential juror whether he or she understands and accepts:

>       (1) that the defendant is presumed innocent of the charge(s) against him or her;
>
>       (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt;

(3) that the defendant is not required to offer any evidence on his or her own behalf; and

(4) that if a defendant does not testify it cannot be held against him or her ***. Ill.S.Ct. R. 431(b) (West 2018).

The circuit court's compliance with Rule 431(b) is reviewed *de novo*. *People v. Thompson*, 238 Ill. 2d 598, 606 (2010).

¶ 28    In this case, the circuit court admonished the jurors of the third and fourth principles, as follows:

The last premise I'll discuss with you is this: In a criminal case, an accused does not have to prove their innocence. An accused does not have to testify. They do not have to call any witnesses on their own behalf. In a criminal case, the burden of proof is on the government. The government has to prove guilt beyond a reasonable doubt. An accused does not have [to] prove anything at all. Hypothetically speaking, there may be a criminal trial. The government may call 100 witnesses against the accused. The accused, which is their perfect right under the law, may choose not to testify, which is also their perfect right under the law, may not call any witnesses on their own behalf. After hearing from 100 people on one side and no people on the other, there can be a reasonable doubt on the jury's mind as to whether the government has met their burned of proof.

You are not to hold it against an accused if they choose not to testify. It is their perfect right under the law. If they choose not to call witnesses, that is also their

perfect right under the law because the burden is on the government and on the government only.

Is there anybody here that does not understand what I'm talking about when I say the government has to prove guilt beyond a reasonable doubt, an accused is not responsible for proving anything in a criminal case? If you don't understand it…Ms. Hernandez, again doesn't understand, I got that. Anybody else?

(No response) …

No other hands are raised.

Anybody disagree or not accept the principle that an accused does not have to testify, they don't have to call witnesses, they don't have to prove anything in a criminal case, the burden of proof is on the government and they have to prove guilt beyond a reasonable doubt?

If you have a disagreement or you do not accept that, please raise your hand.

(No response.)

No hands are raised.

¶ 29　Leevert concedes that he forfeited review of this issue by failing to raise it at trial or in a written posttrial motion. Leevert contends that we should review for plain error. "The plain-error rule bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved claims of error in specific circumstances." *Id.* at 613. The plain-error doctrine applies when: "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness

of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Leevert concedes that a Rule 431(b) violation does not qualify as plain error under the doctrine's second prong and instead argues for relief under the first prong.

¶ 30    The initial step in a plain error analysis is determining whether a clear or obvious error occurred at trial. *People v. Sebby*, 2017 IL 119445, ¶ 49. Illinois courts have held that failing to ask even one juror whether he or she understands and accepts any one of the four *Zehr* principles is clear error. *People v. Montgomery*, 2018 IL App (2d) 160541, ¶ 26. However, prejudice is not presumed under the first prong of plain error, and defendant bears the burden of showing that the evidence was closely balanced. *Sebby*, 2017 IL 119445, ¶ 51. "In determining whether the evidence adduced at trial was close, a reviewing court must evaluate the totality of the evidence and conduct a qualitative, common sense assessment of it within the context of the case." *Id.* at ¶53. This analysis requires an assessment of the evidence on the elements of the charged offenses along with any evidence regarding witness credibility. *Id.*

¶ 31    Regarding the third 431(b) principle, the circuit court did not repeat the exact language contained in the rule ("that the defendant is not required to offer any evidence on his or her own behalf"), but instead stated, "an accused does not have to testify, they don't have to call witnesses, they don't have to prove anything in a criminal case." Leevert argues the circuit court's deviation in language was a violation of the rule. We disagree. The circuit court does not need to recite the precise language of Rule 431(b) to satisfy the rule's requirements. *People v. Kidd*, 2014 IL App (1st) 112854, ¶ 39. Indeed, "[t]here is no special magic language that must be used to determine

whether the potential jurors understand and accept the *Zehr* principles. *People v. Smith*, 2012 IL App (1st) 102354, ¶ 105.

¶ 32    Because the "language of Rule 431(b) is clear and unambiguous," it does mandate "a specific question and response process." *Thompson*, 238 Ill. 2d at 607. The circuit court "must ask each potential juror whether he or she understands and accepts each of the principles in the rule," and "the rule requires an opportunity for a response from each prospective juror on their understanding and acceptance of those principles." *Id.* Here, the court asked potential jurors if they understood that "an accused is not responsible for proving anything in a criminal case?" and if they accepted that an accused does not have to testify, call witnesses, or prove anything in a criminal case. While this language is not precise, the circuit court asked potential jurors whether they both understood and accepted the substance of the third principle. Therefore, the question and response process employed by the court was sufficient regarding the third principle.

¶ 33    However, the circuit court's language regarding the fourth principle violated the rule. Although the circuit court admonished the jurors that they "are not to hold it against an accused if they choose not to testify," the court did not specifically ask whether the jurors understood and accepted that principle. As such, the required question and response process was missing. The circuit court later asked whether anyone disagreed or did not accept "the principle that an accused does not have to testify." The circuit court's language, which the State concedes was "inartful," made it unclear whether the question referred to the third or fourth principle. Even if this court accepts that this question concerned the potential jurors' acceptance of the fourth principle, there was no similar inquiry regarding the jurors' understanding of the principle. Therefore, a clear error occurred.

¶ 34 Despite this error, reversal is not warranted because the evidence was not closely balanced. At trial, Leevert described Jerald's history of violent and aggressive acts, including a 2012 incident where Jerald allegedly ordered a cousin to destroy Leevert's car, a 2013 fight involving Jerald and one of Leevert's neighbors, a 2014 fight where Jerald attacked Leevert apparently over the name of Leevert's clothing line, and the 2015 fight the night before the shooting where Leevert's tooth was knocked out, and he suffered skeletal bruising. Jerald was clearly an aggressive person, but even if this court accepts Leevert's description of Jerald as a violent and dangerous criminal whose years of torment left Leevert in a constant state of fear, Leevert's actions on November 3, 2015, would still not be reasonable.

¶ 35 Leevert was charged with first-degree murder. To convict a defendant of first-degree murder, the State must prove the defendant killed an individual by performing acts that were intended to kill, do great bodily harm or create a strong possibility of death or great bodily harm and that those acts were committed without lawful justification. 720 ILCS 5/9–1(a) (West 2014).

¶ 36 One justification for first degree murder is the affirmative defense of self-defense. 720 ILCS 5/7–1(a) (West 2014). The self-defense statute provides that a person "is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another" against the other person's imminent use of unlawful force. 720 ILCS 5/7–1(a) (West 2008). A person is justified in the use of that force, however, only "if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony." *Id*.

¶ 37 To raise self-defense, the defendant is required to present some evidence as to each of these elements: (1) force was threatened against the defendant; (2) the defendant was not the aggressor;

(3) the danger of harm was imminent; (4) the threatened force was unlawful; (5) the defendant actually and subjectively believed a danger existed that required the use of the force applied; and (6) the defendant's beliefs were objectively reasonable. *People v. Jeffries*, 164 Ill. 2d 104, 127-28 (1995). If a defendant presents some evidence as to each element, the State must prove beyond a reasonable doubt that any one of those six factors was not present. *Id.* "While the law does not require the aggressor to be armed for self-defense to be justified, it must appear that the aggressor is capable of inflicting serious bodily harm without the use of a deadly weapon, and is intending to do so." *People v. Hawkins*, 296 Ill. App. 3d 830, 837 (1998).

¶ 38    Leevert argues he was justified in his use of deadly force because of Jerald's "multitude of prior attacks" against him and his state of mind at the time. Given Leevert believed Jerald had a gun and was about to shoot, the evidence supports a self-defense claim for the first shot only. Leevert did not testify that he panicked and fired multiple shots in rapid succession. On the contrary, Leevert shot Jerald in the neck, watched him fall to the ground, walked toward him, stood over him, and then deliberately shot him once more in the back of the head. There is no plausible version of events that justifies the second shot.

¶ 39    At trial, Leevert failed to offer any rationale for shooting Jerald after he was already down. His testimony suggested he shot Jerald a second time because he was still moving after the first shot but was unsure whether Jerald was trying to get up or move his hands. There is no evidence that Leevert believed Jerald was reaching for his pockets while he was on the ground. Therefore, any supposed movement could not reasonably be viewed as threatening. Whatever threat Jerald posed while he was standing with his fists raised quickly diminished once he was face down on the street, shot in the neck, and likely struggling to breathe. As Leevert walked toward Jerald in

broad daylight, he should have realized Jerald was incapacitated and no longer a threat. The confrontation was over, and Leevert had no reason to fire again. Even if the first shot was self-defense, the second shot was murder. "Although compliance with Rule 431(b) is important, violation of the rule does not necessarily render a trial fundamentally unfair or unreliable in determining guilt or innocence." *Thompson*, 238 Ill. 2d at 611. Even if the circuit court recited the language of Rule 431(b) verbatim, no reasonable jury would have acquitted Leevert. The jury found Leevert guilty of second-degree murder, which was the most favorable outcome given the facts of this case. From these circumstances, we do not find the evidence to be closely balanced, and accordingly, we find no plain error.

¶ 40    Next, Leevert argues this court should remand the case for a new trial where the definitional instruction for first degree murder failed to include the required "without lawful justification" element the State needed to prove beyond a reasonable doubt. Leevert further argues that this instructional error was compounded by remarks made in the closing arguments when both the prosecutor and trial counsel misstated the law. Leevert maintains these errors denied him a fair trial.

¶ 41    In a criminal case, the circuit court is "responsible for fully instructing the jury on the elements of the offense, the burden of proof and the presumption of innocence." *People v. Delgado*, 376 Ill. App. 3d 307, 314 (2007). "The function of jury instructions is to convey to the jury the law that applies to the evidence presented." *People v. Herron*, 215 Ill. 2d 167, 187 (2005). Whether the circuit court failed to properly instruct the jury is reviewed *de novo. Delgado*, 376 Ill. App. 3d at 312.

¶ 42    Leevert concedes that he forfeited review of this issue by failing to raise it at trial or in a posttrial motion. Nonetheless, Leevert asks this court for plain error review or alternatively via trial counsel's ineffective assistance. The State concedes that the circuit court failed to include the "without lawful justification" language in the definitional instruction but argues that the error does not rise to the level of plain error where the jury was correctly instructed on the issue in other instructions. The State also maintains that trial counsel's error in closing argument did not prejudice Leevert.

¶ 43    Supreme Court Rule 451(c) provides that "substantial defects" in criminal jury instructions "are not waived by failure to make timely objections thereto if the interests of justice require." Ill. S. Ct. R. 451(c) (eff. Apr. 8, 2013). This rule crafts a limited exception to the general rule to correct "grave errors" and errors in cases "'so factually close that fundamental fairness requires that the jury be properly instructed.' *Piatkowski*, 225 Ill. 2d at 564.  Rule 451(c) is coextensive with the plain-error doctrine. *Id.* We construe these rules "identically." *Herron*, 215 Ill. 2d at 175. Because we have already concluded that the evidence was not closely balanced for first-prong plain error review, we will consider whether this claim is reviewable as second-prong plain error.

¶ 44    To determine the propriety of the jury instructions, the relevant inquiry is "whether the instructions, considered together, fully and fairly announce the law applicable to the theories of the State and the defense." *People v. Mohr*, 228 Ill. 2d 53, 65 (2008). Illinois Pattern Jury Instruction, Criminal, No. 7.01 (West 2018) ("I.P.I. 7.01"), the definitional instruction for first degree murder, states in relevant part:

> "A person commits the offense of first degree murder when he kills an individual
> [without lawful justification] if, in performing the acts which cause the death, he

intends to kill or do great bodily harm to that individual; or he knows that such acts will cause death to the individual; or he knows that such acts create a strong probability of death or great bodily harm to that individual." IPI 7.01.

The committee notes for I.P.I. 7.01 require the circuit court to include the bracketed language "without lawful justification" whenever an instruction is to be give on an affirmative defense. I.P.I. 7.01, committee notes (West 2018). In this case, the version of I.P.I. 7.01 given to the jury by the circuit court, failed to include the "without lawful justification" element. The issue here is whether this instructional error warrants a new trial under the second prong of plain error.

¶ 45    The State, relying on *People v. Rios*, 318 Ill. App. 3d 354 (2000), argues that an instructional error does not always require reversal. In *Rios*, the defendant was charged with first-degree murder and asserted self-defense. The jury was given the definitional instruction for first degree murder, which did not contain the "without legal justification" language. 318 Ill. App. 3d at 359. However, the jury was given the first-degree and second-degree murder issues instruction, which included the appropriate self-defense language, a self-defense instruction, and an instruction defining a mitigating factor for the purposes of second-degree murder. *Id.* at 359-60. The defendant argued the failure to include the "without lawful justification" language in the definitional instruction constituted reversible error. *Id.* Defendant did not raise the issue at trial but argued that the failure constituted a substantial defect under Rule 451(c). *Id.*

¶ 46    This court rejected the defendant's argument that the failure to include "without lawful justification" in the definitional instruction constituted plain error. *Id.* at 362-64. First, this court determined that the evidence was not closely balanced, where none of the evidence supported the defendant's self-defense theory. *Id.* at 361. Next, this court determined the omission of the

"without lawful justification" language in the definitional instruction did not deny the defendant a fair trial. The *Rios* court found that the omission did not result in the jury receiving contradictory instructions, instead the issues and self-defense instructions complemented the definitional instruction. *Id*. at 362. Finally, the court determined the jury was "adequately instructed," given the use of the correct self-defense language in the issues and self-defense instructions and the extensive discussion of the justification issue during both parties' closing arguments. *Id*. at 364. As such, the court deemed the issue forfeited, and found that even if it considered the omission, it would not find reversible error. *Id*.

¶ 47    Leevert argues that the facts here are analogous to *People v. Berry*, 99 Ill. 2d 499 (1984). In *Berry*, the defendant was found guilty of murder and armed violence after he shot and killed the victim following an argument. *Id*. at 500-02. The defendant claimed self-defense and the circuit court provided the jury with a series of definitional and issues instructions, including the definitional instruction for murder, the burden-of-proof instruction, the issue instruction for a murder case, and the instruction defining when the use of force is justified. *Id*. at 502-03. The jury was not provided a prior version of IPI Criminal 4th No. 24–25.06A which, in addition to proving the elements of the crime, required the State to prove, beyond a reasonable doubt, that the defendant was not justified in using the force which he used. *Id*. at 502-03. Defense counsel did not inform the jury during closing arguments or any time during trial that the State had the burden of proving beyond a reasonable doubt that the defendant was not justified in his use of force. *Id*. at 506, "[t]he instructional gap was not filled by the prosecutor who, in rebuttal, merely acknowledged that the State has the burden of proof." *Id.* Our supreme court found that "the jury

was not apprised that the State had the burden of proving, beyond a reasonable doubt, that defendant was not justified in the force he used and, therefore, grave error resulted." *Id.*

¶ 48    We find *Rios* persuasive and *Berry* distinguishable. Although the jury here received a definitional instruction for first-degree murder that lacked the "without lawful justification" element, the jurors were nonetheless sufficiently apprised of the State's burden to prove Leevert was not justified in his use of force beyond a reasonable doubt. Prior to providing the definitional instruction, the circuit court admonished the jury:

> "In this case, the State must prove beyond a reasonable doubt the proposition that the Defendant was not justified in using the force which he used. You have heard testimony of Jerald Strong's prior acts of violence. It is for you to determine whether Jerald Strong committed those acts. If you determine that Jerald Strong committed those acts, you may consider that evidence in deciding whether the State has proved beyond a reasonable doubt that the Defendant is not justified in using the force which he did."

Later, the circuit court provided the issues instruction, which Leevert concedes was correct. The court informed the jury that to sustain either the charge of first-degree or second-degree murder, the State must prove three propositions, the third being "that the Defendant was not justified in using the force which he used." The court also instructed, "[i]f you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, your deliberations should end and you should return a verdict of not guilty of first-degree murder."

March 22, 2021

¶ 49    In *Rios*, the instructional gap was filled in closing arguments where both parties accurately reflected the "without legal justification" element. Here, the circuit court's admonitions and the issues instruction sufficiently apprised the jury of the State's burden of proof. In this case, like in *Berry*, neither party filled the gap in closing arguments, but unlike in *Berry*, the jury here received clear admonitions that the State had the burden to prove, beyond a reasonable doubt, that the defendant was not justified in his use of force. It is unclear if the jury in *Berry* ever received such admonitions. There is no evidence that the jury here ignored or misunderstood these clear admonitions.

¶ 50    Leevert then argues that the State's closing argument flipped the burden of proof "on its head." During closing argument, the State explained the proposition of justified use of force as follows:

> "Now, the third proposition in this case is that the Defendant was not justified in using the force which he used. To use force in defense of a person, there is a definition. A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend himself against the imminent use of unlawful force. However, a person is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself. So, all of these words that are highlighted, every one of those has to be proven. That's just not the facts of this case."

¶ 51    Leevert contends the line, "every one of those has to be proven," placed a burden on Leevert to prove that he was justified in his use of force. We find this argument unpersuasive. The

State began its argument by stating that it must prove all three propositions for first-degree murder. This line, in the context of the State's overall argument, did not shift any burden to Leevert.

¶ 52    Finally, Leevert argues defense counsel's closing argument "muddied" the issue of justified use of force. Defense counsel stated:

> "[Leevert] was justified, and he used the force in his mind that was necessary to defend himself when he thought that Jerald was going to shoot him first. He had every right to do that, and once you deliberate, you will find that he is justified. You will find him not guilty of first-degree murder, but that's not where everything ends. You still have to decide about the second-degree murders. There is two, as she explained. There's two different mitigating factors that would reduce first-degree to second. The first one is if you find that those initial factors in the first degree are met, then you go on to see if there are any mitigating factors. Yes, they're both of them that you're going to get. They're both there."

¶ 53    We acknowledge, and the State concedes, that counsel's remarks were improper and a misstatement of the law. The law does not require the jury to consider second-degree murder if it finds the defendant not guilty of first-degree murder. Instead, "[i]f the State fails to prove that the defendant was not justified in using the force that he used, then the jury must find the defendant not guilty of first-degree murder and its deliberations end. If the State, however, has successfully negated the defendant's claim of self-defense and has proven each of the other elements of first-degree murder, then, and only then, may the jury proceed to a determination of second-degree murder." *Jeffries*, 164 Ill. 2d at128-29.

¶ 54    Despite this misstatement, the error was harmless given the circuit court's clear admonitions regarding the law. Prior to closing arguments, the circuit court stated that it would instruct the jury about the law that applies to Leevert's case. Following closing arguments, the circuit court informed the jury, "[t]he law that applies to this case is stated in these instructions, and it is your duty to follow all of them. You must not single out certain instructions and disregard others." Later, the circuit court explained, "[y]ou may not consider whether the Defendant was guilty of the lesser offense of second-degree murder until and unless you have first determined that the State has proved beyond a reasonable doubt each of the previously-stated propositions." A review of the record reveals that the jury was sufficiently informed of the correct legal standards. Therefore, no grave error resulted.

¶ 55    Alternatively, Leevert argues he is entitled to a new trial because counsel was ineffective for failing to object during the trial and in the posttrial motion to the inaccurate version of I.P.I. 7.01 given to the jury.

¶ 56    A criminal defendant has a constitutional right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 690-691 (1984); U.S. Const. amends. VI, XIV; Ill. Const. 1970, art. I, sec. 8. In determining whether a defendant was denied effective assistance of counsel, this court applies the familiar two-prong test set forth in *Strickland*. To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defendant. *People v. Domagala*, 2013 IL 113688, ¶ 36. To demonstrate prejudice, a defendant must show that but for counsel's deficient performance, there is a reasonable probability that the outcome of the trial would have been different. *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to

undermine confidence in the outcome." *Id*. If the defendant fails to establish either prong, his ineffective assistance claim must fail. *People v. Colon*, 225 Ill. 2d 125, 135 (2007). Whether counsel was ineffective is an issue we review *de novo*. *People v. Chapman*, 194 Ill. 2d 186, 217 (2000).

¶ 57    Here, defense counsel performed deficiently by failing to object at trial and in the posttrial motion to the incorrect jury instruction. "Trial counsel has a duty to conduct both factual and legal investigations on behalf of a client." *People v. Pollards*, 367 Ill. App. 3d 17, 23 (2006). Whether Leevert was justified in his use of force was the key issue in this case, thus counsel's failure to object to a definitional instruction for first-degree murder that lacked the "without lawful justification" element is evidence of ineffectiveness. See *People v. Serrano*, 286 Ill. App. 3d 485, 492 (1997) (ineffective assistance where defense counsel argues a theory of defense but then fails to offer an instruction on that theory of defense).

¶ 58    Leevert was not prejudiced by counsel's deficient performance. The evidence of Leevert's guilt was overwhelming, and it is undisputed that Leevert intentionally shot and killed Jerald. His second-degree murder conviction indicates the jury found the elements of first-degree murder were met but also found a mitigating factor. This mitigating factor was likely Jerald's history of violence, including incidents where Leevert was the victim. The jury likely found Leevert believed he was justified in his use of force given, but also found this belief to be unreasonable. As explained above, there was no explanation for Leevert's second shot while Jerald was already incapacitated. Given the evidence, there is no reasonable probability that the outcome of the trial would have been different had defense counsel objected to the inaccurate version of I.P.I. 7.01. Leevert shot Jerald in the neck, watched him fall to the ground, walked toward him, stood over him, and then

deliberately shot him once more in the back of the head. The evidence was not closely balanced, and no reasonable jury would have found that these facts supported a self-defense claim. Therefore, defense counsel's mistake did not prejudice Leevert, and we affirm his conviction.

¶ 59                                        CONCLUSION

¶ 60     For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 61     Affirmed.